EMILY ST. JOHN *et al.*

*v.*

THE CITY OF EAST ST. LOUIS.

*Filed at Mt. Vernon January 24, 1891.*

1. SPECIAL ASSESSMENT—*of the ordinance—how far essential—requisites—and of the requirements under it.* A valid ordinance is the foundation of every special assessment proceeding for the improvement of a street.

2. Where an ordinance for the improvement of a street is repealed, in part, by a subsequent one, or such ordinance is so changed as to provide for the construction of a viaduct in a certain part of the street, whereby a part of the improvement is abandoned, a special assessment for the whole cost of the work as originally intended will not be sustained.

3. An ordinance for the improvement of a street must describe the improvement as made or to be made. If made for the paving of a street, it will not authorize an assessment for the paving of only a part of the street. The property owners can not be specially assessed for the cost of work not intended to be done.

4. A special assessment can not be levied to pay for a part of an improvement required by an ordinance, nor can a special assessment be levied to pay for the whole after a part has been abandoned. The improvement required by ordinance is an entirety, and the abandonment of a part of it is fatal to the whole proceeding.

5. While the completion of an entire improvement of a street as ordered may be beneficial to all the property to be assessed therefor, the completion of less than all may not only be of no benefit to any, but an injury to all, or some part of, the property in front of which the work is required to be done.

APPEAL from the County Court of St. Clair county; the Hon. S. F. GILMORE, Judge, presiding.

Mr. JESSE M. FREELS, and Mr. CHAS. P. KNISPEL, for the appellants:

A valid and sufficient ordinance is a condition precedent to and the foundation for all proceedings to make local improvements by special assessment in this State. *Lindsay* v. *Chicago*, 115 Ill. 122; *Railroad Co.* v. *Jacksonville*, 114 id. 562.

If the ordinance is, for any reason, invalid, the court is without jurisdiction to confirm the assessment, and the proceeding must be dismissed. See *Hyde Park* v. *Spencer,* 118 Ill. 457; *Ogden* v. *Lake View,* 121 id. 424; *Kankakee* v. *Potter,* 119 id. 327; *Sterling* v. *Galt,* 117 id. 20.

The two ordinances being inconsistent, the latter must prevail. *Devine* v. *Commissioners,* 84 Ill. 590; *Dingman* v. *People,* 51 id. 279; *Kepley* v. *People,* 123 id. 377; *Goodall* v. *People,* id. 393; *Dutton* v. *Aurora,* 114 id. 138.

The assessments made under the ordinance so repealed are without authority of law, and void.

The abandonment of a part of the improvement is fatal to the proceeding. *Henderson* v. *Lambert,* 14 Bush, 28; *Murray* v. *Tucker,* 10 id. 243; Welty on Assessments, p. 446, sec. 298; p. 438, sec. 293; *Dorathy* v. *Chicago,* 53 Ill. 79; *Holmes* v. *Hyde Park,* 121 id. 130; 2 Dillon on Mun. Corp. (3d ed.) sec. 810; *Dougherty* v. *Hitchcock,* 35 Cal. 523; *Pepper* v. *Philadelphia,* 114 Pa. St. 212.

Messrs. Conkling & Grout, and Mr. F. G. Cockrell, Corporation Counsel, for the appellee.

Mr. Justice Magruder delivered the opinion of the Court:

This is an appeal from a judgment of the county court of St. Clair County, overruling objections and confirming a special assessment roll. The judgment was entered upon the application of the City of East St. Louis for the confirmation of special assessments made against the lands and lots of appellants and others named in the assessment roll, to pay the cost of grading, paving and sewering Broadway, a street in that city, as provided for and contemplated by ordinance No. 583 passed by the common council of said city. The case was tried before the court and a jury. The objections, filed in the court below by the property owners, who are appellants here, to the confirmation of the assessment roll and to the

admission of the said ordinance in evidence, and the exceptions taken to instructions given and refused, and the reasons filed in support of the motions for new trial and in arrest of judgment, all embody the following points now presented by the assignment of errors: that the ordinance in question did not specify therein the nature, character, locality and description of the improvement as required by law, and was otherwise illegal and void, and had been repealed, and was not in force at the time the assessments were made; that, by its action after the passage of said ordinance, the city put it out of its power to comply with the requirements thereof, and changed the plan of the contemplated work, and abandoned a part of the improvement for which the assessments were made; and that the court had no jurisdiction to try the case.

Ordinance No. 583 was passed and approved on June 1, 1889, and published on June 22, 1889. It provides for the improvement of Broadway from the west line of the St. Clair County Turnpike to the east line of the railroad tracks near Cahokia Creek, a distance of five blocks. Broadway is a street 80 feet wide, running northwesterly from the turnpike to the Creek west of the railroad tracks. The driveway of the street is 48 feet from curb to curb, the sidewalks on either side being each 16 feet wide.

By the first section of Ordinance No. 583, it is ordained that the portion of the street lying between the points above named "be graded and paved forty-eight feet in width between the curb lines established by ordinance, with the necessary fills for approaches at intersecting streets, as designated and provided by the maps, profiles and specifications on file in the city engineer's office, so as to give a graded and paved roadway forty-eight feet in width between the said curb lines of said street, with the said necessary fills for approaches at intersecting streets, the paving to be with granite blocks equal to the best Missouri granite, the said granite blocks to be not less than seven nor more than eight inches deep, not less than

14—136 Ill.

ten nor more than thirteen inches long, and not less than three and one-half nor more than four and one-half inches wide, to be set on good river sand, laid to a uniform depth of twelve inches, on a solid bed of earth, said roadway to have an arch or crown in the center, six inches high, and dropping gradually therefrom to each of the curb lines, and also that the said paving be covered with sufficient clean, silicious river sand to fill all cracks and crevices in said pavement."

Sections 2 and 3 provide for retaining walls, and the curbing crowning the same, on either side of the street. Section 4 provides for the grading, rolling and filling of the roadway. Sections 5, 6, 7 and 8 prescribe the form, size and quality of the granite blocks, the manner in which the same shall be set, and the grade of the pavement. Sections 9 and 10 provide for the construction of a clay pipe sewer in the center line of Broadway, with connections with the lots, and with cesspools at the street corners, and having a depth of five feet below the city directrix at the intersection with the Turnpike and 17 feet below the same at Cahokia Creek. Section 11 provides that all the work shall be done under the supervision of the city engineer, and in accordance with maps, profiles and specifications on file in his office. By section 12 the improvements are to be made, and the cost thereof is to be paid, by special assessment levied upon the property benefited thereby, the remainder of such cost to be paid by general taxation. Section 13 appoints three aldermen commissioners to make an estimate of the cost of said improvements.

The report of the commissioners to the city council, estimating the cost of the improvements at $38,000.00, was made on July 1, 1889, and approved by the council on the same day, and the city attorney was at the same time directed to file a petition in the county court "for proceedings to assess the estimated cost of such improvement * * * in said ordinance No. 583 mentioned." The petition was so filed on July 17, 1889, and commissioners were appointed by the

county court to make an assessment "of the cost of grading, paving and sewering" Broadway "between Cahokia Creek and the southerly line of the St. Clair County Turnpike." The commissioners were sworn on July 22, 1889, and returned the assessment roll into court on August 8, 1889.

On July 1, 1889, the city council of East St. Louis passed another Ordinance, known as Ordinance No. 586, which was approved by the Mayor on the same day, and which provides for the erection of a viaduct on and along the center line of Broadway from Third Street to John Street. The portion of the Street to be covered by the viaduct is a part of that portion of the street embraced within the improvement specified in Ordinance No. 583, as above set forth. The part of the street included in the improvement provided for in Ordinance No. 586 is about one fifth in length of the portion of the street included in the improvement called for by Ordinance No. 583.

Upon the trial below, the defendants introduced in evidence Ordinance No. 586, the sixth section of which is as follows: "This ordinance shall be in full force and effect from and after its passage and approval, and all ordinances, or parts thereof, in conflict with this ordinance, are hereby repealed."

John Street is a block west of Cahokia Creek. The design of the viaduct, as we understand it, is to furnish an elevated roadway over the railroad tracks already mentioned, and also over the Creek lying just west of said tracks. The abutment for the proposed viaduct or bridge begins 20 feet west of Third Street. It is 36 feet wide and 124 feet long; but the "fill" for the approach to the viaduct begins on the east side of Third Street, which is 60 feet wide, thus making the whole viaduct 204 feet in length, including the inclined approach and the embankment and abutment. The abutment consists of three walls, the spaces between which are filled with sand and dirt, so as really to make one solid wall. The wall is about 5 feet high at the east end and 10 feet high at the west end, exclusive of coping and railing. The next pier is at the intersection of

Broadway and Second Street; it is 8 feet thick and 36 feet wide on Broadway; the space on Broadway between the two abutments is divided into iron spans, each from 20 to 25 feet long, resting on iron columns 2 feet square set on stone foundations, so as to support the iron bridge 20 feet above the tracks.

Of the driveway on Broadway, which has already been stated to be 48 feet wide from curb to curb, the viaduct and its stone abutments require 36 feet, which leaves only 12 feet, 6 feet on each side of the abutment, for street purposes. There will be no wagon way on Broadway across the Creek under or by the side of the viaduct. Persons desiring to go west to St. Louis must cross the viaduct, beginning their ascent of the elevation at Third Street.

It is manifest from the statement thus made, that Ordinance No. 586 is in conflict with Ordinance No. 583, so far as that portion of Broadway is concerned, which lies west of the east line of Third Street. By Ordinance No. 583, the driveway, 48 feet wide, is to be graded and paved with granite blocks not only from the Turnpike westward to Third Street, but from Third Street westward to the railroad tracks; but by Ordinance No. 586 the driveway westward of the east line of Third Street to the railroad tracks is not to be so graded and paved, but a space in the middle of the driveway 204 feet long and 36 feet wide is to be given up to a viaduct, and only the spaces on each side of said viaduct six feet wide are to be graded and paved.

Ordinance No. 583 was therefore changed, if not repealed, by Ordinance No. 586. On the very day, on which the common council approved a report estimating the cost of paving the whole of the driveway between the specified points, it passed an Ordinance abandoning such pavement west of Third Street, except upon the spaces six feet wide alongside of the sidewalk curbing on either side of the street.

A valid ordinance is the foundation of every special assessment proceeding. The lots of the objectors have been assessed for the improvement specified in Ordinance No. 583, although a part of that improvement was abandoned before the assessment was made. The proof is clear, that, since Ordinance No. 586 was passed, the city has done nothing towards paving the whole width of the driveway west of Third Street, and that it proposes to leave unpaved a space therein 204 feet long and 36 feet wide. The assessment, however, is made for paving this space as well as the balance of the driveway. In this way the property owners are assessed for work which is not done, and for an improvement which is not made in accordance with the ordinance describing it.

The Statute requires that, "whenever such local improvements are to be made, wholly or in part by special assessment, the said Council in cities shall pass an ordinance to that effect, specifying therein the nature, character, locality and description of such improvement." (Rev. Stat. chap. 24, Art. 9, sec. 19). In the present case, there is no ordinance specifying the real improvement, which the city intends to make and is actually engaged in making. The improvement, which the city is making upon Broadway, consists in paving a driveway 48 feet wide up to Third Street, and, west of that, in paving two strips of driveway each six feet wide. But the Ordinance, which lies at the basis of the present assessment, provides for improving Broadway by paving a driveway 48 feet wide west as well as east of Third Street.

Although the viaduct ordinance changed Ordinance No. 583 by taking away for the purposes of a viaduct a part of the street which the latter ordinance required to be paved, yet the assessment was allowed to proceed as though no such change had been made. The assessment is not for the improvement as changed by the viaduct ordinance, but for the improvement as originally contemplated. And this is so, notwithstanding the fact that the change was made before the petition was filed

in the county court for assessing the estimated cost of making the improvement specified in the paving ordinance. The viaduct ordinance provides for a special assessment for the construction of the viaduct at an estimated cost of $55,000.00. Therefore, as the pavement of Broadway between the Turnpike and the railroad tracks with the exception of a strip 204 feet long and 36 feet wide west of Third Street is not made under ordinance No. 583, nor under ordinance No. 586, nor under the former as changed by the latter, there is no ordinance specifying the real nature, character, locality and description of the improvement as required by law.

To make these property owners pay for paving a piece of ground 204 feet long and 36 feet wide, when no such pavement is to be laid, is gross injustice. Counsel suggest that the difficulty can be obviated by returning to the property owners the difference between the cost of the pavement, for which the assessment is levied, and the cost of the pavement as actually laid. This suggestion does not solve the difficulty. How is the amount of the difference to be apportioned among the lot owners? The improvement is an entirety. The authority to make the cost of it a charge upon the property benefited must be exercised in a manner prescribed by ordinance, and not otherwise. Here, there was the fatal absence of an ordinance describing the improvement as made, or to be made. A special assessment cannot be levied to pay for a part of the improvement required by an ordinance, nor can a special assessment be levied to pay for the whole after a part has been abandoned. (*Dorathy* v. *City of Chicago,* 53 Ill. 80; *Holmes* v. *Village of Hyde Park,* 121 id. 128; *Murray* v. *Tucker,* 10 Bush, 240; *City of Henderson* v. *Lambert,* 14 id. 24; Welty's Law of Assessments, secs. 298 and 293; 2 Dillon on Munc. Corp. (3d ed.) sec. 810; *Pepper* v. *City of Philadelphia,* 114 Pa. St. 96; *Dougherty* v. *Hitchcock,* 35 Cal. 523). "While the completion of the entire contract might be beneficial to all the property, the completion of less than all might not only be of

no benefit to any, but an injury to all, or to the portion or some part of it, in front of which the work required may have been done." (Welty's Law of Assessments, sec. 298, *supra*).

For the reasons here stated the judgment of the County Court is reversed and the cause is remanded to that Court for further proceedings in accordance with the views here expressed.                                *Judgment reversed.*