(No. 11040.)

THE CITY OF CHICAGO, Appellee, *vs.* JAMES F. LORD *et al.*— (THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellant.)

*Opinion filed February 21, 1917.*

1. EMINENT DOMAIN—*owner of property taken in condemnation is entitled to its value for most profitable use in its present capacity.* The owner of property appropriated for a public use is entitled to its value for the most profitable use for which it is available; but this availability does not refer to a mere future possibility, but to a present capacity for a use which may be anticipated with reasonable certainty and made the basis of an intelligent estimate of value.

2. SAME—*when a railroad company is entitled to only nominal damages for taking of land already burdened with perpetual easement in public.* Where a railroad owns a tract of land which is used as an approach to a public viaduct and which is burdened with a perpetual easement in the public, the company is entitled to only nominal damages for the taking of such tract in widening a street and constructing a new viaduct, and the possibility of the use of such tract by the city for subway purposes after the new viaduct is constructed is too remote to furnish ground on which to base an intelligent estimate of just compensation.

3. SAME—*report of commissioners is prima facie evidence of damages but is not conclusive.* The report of the commissioners in a condemnation case is *prima facie* evidence of the amount of compensation to be awarded, and one who claims such amount is

too great or too small has the burden of introducing evidence to establish his claim.

4. SAME—*what rights are acquired by city in condemning railroad property for public street without any restrictions.* The condemnation of railroad property for a street across the tracks of the railroad company, unless the use is in some way restricted, authorizes the use of the street on the surface or above or below the surface by viaduct or subway, and the use for public travel on the surface is necessarily inconsistent with its use by the company.

5. SAME—*party seeking condemnation may be permitted or required to exhibit evidence showing how it is proposed to use the easement.* In appropriate cases the party seeking condemnation may be permitted or required to exhibit plans and introduce evidence showing the manner in which it is proposed to use the easement to be acquired, the object of the introduction of such evidence being to enable a just estimate to be made of the damages by showing the rights to be taken and acquired by the condemnation.

6. SAME—*petitioner in condemnation is bound by specifications for the improvement.* The petitioner in a condemnation proceeding is bound by the plans and specifications of the work to be done and cannot depart from them to the injury of the land owner without additional compensation.

7. SAME—*specifications for improvement need not be stated in petition but may be fixed by stipulation made on the trial.* Where the petitioner and a land owner have entered into a contract determining their rights in regard to the construction and operation of a proposed improvement it is not necessary to amend the petition in the condemnation proceeding and set out the contract but it is sufficient to produce it at the trial, and it is not necessary that either the ordinance or petition set out the particular rights to be acquired under the proceedings.

8. SAME—*court has power to state in its judgment in condemnation the nature of the interest vested in the petitioner.* In whatever language the judgment in a condemnation proceeding may be rendered the statute will limit its effect to the rights which the statute authorized to be condemned, but the court has the power to specifically state in the judgment the nature of the interest vested in the petitioner.

9. SAME—*when judgment in condemnation should restrict the rights of petitioner in accordance with terms of contract with land owner.* In a condemnation proceeding for the widening of a city street and the construction of a new viaduct over the property of a railroad company, where a contract guaranteeing the rights of the company to the use of the condemned property for its tracks and warehouses beneath the viaduct is introduced in evidence, the

judgment should specifically restrict the rights of the city to the terms of the contract.

10. SAME—*evidence of future use of railroad property for erection of warehouses is not admissible in a condemnation proceeding.* In a condemnation proceeding for the widening of a street by the construction of a viaduct over railroad property the railroad company cannot introduce evidence of the availability of its property as a freight terminal and of the possible future erection of lofty warehouses which the viaduct will prevent, but the measure of damages is the reduced value of the property for serving the purpose for which it was previously used.

11. HIGHWAYS—*what is necessary to constitute such abandonment of a public highway as will return the property to the abutting owner.* To constitute an abandonment of a public highway so as to return the property to the abutting owner there must not only be a cessation by the public authorities to use or assert control over the highway but there must be an obstruction by some private person on the faith that the highway has been abandoned and acquiescence in such obstruction by the public authorities.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

HERBERT HAASE, and HUBERT HOWARD, (ROBERT DUNLAP, of counsel,) for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, HARRY F. ATWOOD, EUGENE H. DUPEE, and TOLMAN, REDFIELD & SEXTON, (ROBERT REDFIELD, and HENRY P. CHANDLER, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal by the Atchison, Topeka and Santa Fe Railway Company from a judgment of condemnation in a proceeding instituted by the city of Chicago for the widening of East and West Twelfth street from Michigan avenue to Ashland avenue. East of Canal street Twelfth street is to be widened to one hundred and eighteen feet by adding a strip of land adjoining it on the south which is sixty-eight feet wide from Michigan avenue to State street

and fifty-two feet wide from State street to Canal street, Twelfth street being fifty feet wide east of State street and sixty-six feet wide west of State street. It is proposed to erect a viaduct the full width of the street from Wabash avenue to Canal street. The property in controversy on this appeal is indicated in the following plat, which represents Twelfth street from Wabash avenue to a line west of State street:

There is a viaduct over Twelfth street from State street west, the approach to which, beginning west of Wabash avenue, extends to State street, which it crosses diagonally, connecting with the viaduct. Twelfth street is paved with granite blocks, both under the viaduct and east of State street, and is used for teaming under the viaduct to reach the team tracks and freight houses of various railroads which are situated on either side of Twelfth street. The letters on the plat indicate the different tracts in controversy as they are indicated in the briefs and arguments which have been filed by the respective parties. The approach to the viaduct is fifty feet wide, is wholly south of Twelfth street between Wabash avenue and State street and covers tracts A, B, C and D.

Tract A is burdened with a perpetual easement for the viaduct approach and is wholly covered by a solid dirt fill. The commissioners reported a nominal compensation of two dollars for it. The easement of public travel necessarily excludes any other use of the land by the owner of the fee. It is claimed, however, by the appellant that the right to use that part of the tract which is under the surface

for a subway, and the right of reversion upon the abandon-
ment of the viaduct approach, give an added value to its
interest in the tract, for which it has the right to be com-
pensated. A witness testified that there was a uniform basis
established by the city of Chicago for determining the value,
proportionately, as between the different levels of public
property; that the sub-surface space is valued at twenty-five
per cent, the surface at fifty per cent and the space above
the first floor at twenty-five per cent, and that basis applies
where rights are desired under the surface of public prop-
erty. Another witness testified that, from his observation,
when a public service corporation has obtained a judgment
of condemnation it will usually pay about ten per cent in
addition to the award to get the title to the property in-
stead of an easement. The appellant then offered to show
by the witness that the appellant's interest in tract A at
the time the petition was filed was $17,103, and that this
sum was ten per cent of the full value of the tract freed
from the easement for the viaduct approach. The court
sustained an objection, and held that the supposed interests
were too uncertain and remote to form a basis for the as-
certainment of damages.

In ascertaining the compensation to be made to the
owner of property appropriated for a public use he is en-
titled to its value for the most profitable use for which it
is available. This availability, however, does not refer to
a future possibility but to a present capacity for a use which
may be anticipated with reasonable certainty and made the
basis of an intelligent estimate of value. "Possible or imag-
inary uses are to be excluded, nor can the owner show the
probable future use of the property." (*Chicago, Burling-
ton and Quincy Railroad Co.* v. *City of Chicago,* 149 Ill.
457.) "Nothing should be allowed for imaginary or specu-
lative damages or such remote or inappreciable damages as
the imagination may conjure up and which may or may not
occur in all the future." (*Jones* v. *Chicago and Iowa Rail-*

*road Co.* 68 Ill. 380; *Peoria and Pekin Union Railway Co.*
v. *Peoria and Farmington Railway Co.* 105 id. 110; *Chicago and Northwestern Railway Co.* v. *Town of Cicero,*
157 id. 48; *Chicago, Burlington and Quincy Railroad Co.*
v. *Reisch & Bros.* 247 id. 350.)   The appellant can make
no use whatever of the land in question.   The abandonment
of the approach to the viaduct is a remote possibility and
the construction of the subway is entirely uncertain.   Such
remote and uncertain possibilities furnish no ground upon
which to base an intelligent estimate of just compensation.
The testimony in regard to the rule observed by the city
in estimating the rent to be paid for the use of public property under the surface of the ground, or the amount which
public service corporations will usually pay to secure the fee
instead of an easement, does not tend to show that the appellant is entitled to compensation for such remote and speculative possibilities as the appellant insists upon.

The tract marked B was an alley twenty feet wide which
was acquired by condemnation.   After the construction of
the viaduct over it the headroom was five feet four inches
at the east side and seven feet at the west side.   It was
never vacated, but the appellant claims that it was abandoned and became the property of the appellant, the owner
of the abutting land.   In 1887 the appellant conveyed to
the city the new alley shown on the plat and the old alley
was then boarded up and for twenty years has not been
used.   The commissioners' report allowed no compensation
for this tract, no allusion is made to it in the petition or
proceedings and the court refused to hear evidence in regard to it.   A public highway may be abandoned but the
public rights cannot be divested by mere non-user.   There
must not only be a cessation by the public authorities to assert control over the highway, but there must be an obstruction by some private person on the faith that the highway
has been abandoned, and such obstruction must have been
acquiesced in by the public authorities.   (*People* v. *Cleve-*

*land, Cincinnati, Chicago and St. Louis Railway Co.* 269 Ill.
555; *City of DeKalb* v. *Luney,* 193 id. 185.)   Here it does
not appear who boarded up the alley and the city continued
to make use of it for travel by means of the viaduct.   There
was no error in regard to this tract.

The award made by the commissioners for tract C was
satisfactory to the appellant and no objection is made to it.

Tracts D and E are situated at the southeast corner of
Twelfth and State streets.   The appellant owns them in fee,
but tract D is subject to an easement for the viaduct ap-
proach, which entirely covers it.   The space beneath the via-
duct is capable of use for commercial purposes and is actu-
ally occupied by a one-story building.   Tract E, which is
eighteen feet wide, fronting State street, lies immediately
south of tract D and is not incumbered with any easement.
It is part of a tract fronting one hundred and fifteen feet on
State street, which is occupied by a four-story building, di-
vided by a wall extending through it fifty-one feet from the
north end.   The report of the commissioners treated the
two tracts as a single parcel and made an award of $23,800
for the land and $11,000 for the improvements.   The ap-
pellant is satisfied with the allowance for the improvements
but insists that the award for the land is too low, and filed
a petition claiming damages to the remainder of the build-
ing on the property of which tract E is a part.

The court fixed the compensation for the land at the
amount reported by the commissioners.   All the witnesses
agreed as to tract E that the value of the land was $12,636,
being $10 a square foot.   This left $11,164 as the value of
tract D, being $3.18 a square foot.   Two witnesses intro-
duced by the appellee, experts in real estate values, fixed
the value of tract D, one at $3, the other at $2.80 a square
foot.   One such witness introduced by the appellant fixed
the value at $5 a square foot.   The latter, however, included
in his valuation the possible use of the ground below the
surface for a subway and the possibility of reversion, which

276 — 37

we have decided are not to be considered. Basing the value solely on the revenue, which the witness stated would be a fair criterion of the value, he said that he would be justified in saying that tract D would bring in a revenue on the basis of $4 a square foot. These witnesses were all examined and cross-examined as to the basis of their estimate of value, the use of the property and the revenue to be derived from it, and the judgment is a fair conclusion from all the evidence.

The court found the just compensation for the improvements on tracts D and E to be $11,000, including all damage to the remainder of the improvements not taken on the tract occupied by the four-story building. The appellant insists that the commissioners having reported the damages to the improvements on tracts D and E to be $11,000 and the appellant not having objected to that amount but accepted it, the question of the value of the improvements on the property taken was settled and could not be inquired into, but that the only question to be considered was that raised by its petition of the damage to the improvements on the remainder of the property which was not taken. The statute provides that the return and filing of the commissioners' report shall be deemed an application by the petitioner for judgment of condemnation of the property to be taken or damaged. It is not, however, conclusive upon the petitioner as to the amount of compensation to be paid for property taken or damaged. (*City of Decatur* v. *Vaughan,* 233 Ill. 50.) The commissioners are not the agents of the city but are officers of the court appointed to discharge a duty imposed by law. Their report is declared to be *prima facie* evidence of the amount of compensation to be awarded. The effect of this declaration is to impose upon the party claiming that the amount should be greater or less than that reported, the burden of introducing evidence to establish the claim. By its objection the appellant insisted that the amount allowed was insufficient,

and by its petition that it should be allowed compensation for property damaged but not taken. The whole issue, therefore, was what compensation should be allowed for property taken and for property damaged but not taken, and on this issue the report was *prima facie,* but not conclusive, evidence for either side. The estimates of the witnesses as to the value of the building varied. The testimony of the appellee's witnesses placed the value of that part of the building north of the partition wall at $8975, which was regarded as totally destroyed. The cost of re-adjusting the wall was placed at $1000, making the whole damage $9975. According to the appellant's testimony the value of the north section of the building was $15,332.88, and it would cost $1629 to make the partition wall comply with the city ordinances. The cost of re-adjusting the remainder of the building after cutting off the eighteen feet, so as to make it tenantable and comply with the city ordinances, would be, according to one witness, $15,724.47, according to another, $16,586.42. Since the cost of re-construction, according to this evidence, would exceed the value of the building, the award for damages to the building could not exceed its value, $15,332.88, and the cost of changing the partition wall, $1629. If the appellee's evidence is followed, the judgment of $11,000 exceeds the appellant's damages to the whole building by more than $1000, but if the appellant's evidence is taken it does not equal the damages by nearly $6000. The court viewed the premises, the finding is within the range of the testimony, and we cannot say that it is not sustained by the evidence.

Tracts F and G together constitute a parcel of land situated at the southwest corner of Twelfth and State streets, having a frontage of fifty-two feet on State street and one hundred feet on Twelfth street. No part of this parcel is under the viaduct or subject to any easement and the appellant owns it in fee. Tract F is the east sixty-six feet of the parcel, and on the north twenty-four feet of the tract, front-

ing State street, is a three-story building used for storage and other purposes, extending back sixty feet on Twelfth street. South of this building the east twenty-five feet of tract F are vacant and the west forty-one feet are occupied by a part of the appellant's "out-freight house," which extends south several hundred feet, at which all out-going freight is received and loaded on cars. Tract G is the thirty-four feet immediately west of tract F. It is fifty-two feet long north and south and is occupied by three railroad tracks and a cross-over. These tracks go north across Twelfth street and about one block beyond it. The two easternmost are known as house tracks, and are used for setting cars and for loading out of and unloading into the freight house on tract F. The westernmost track is a thoroughfare track, by which cars are transferred to the team tracks, yards and freight houses north of Twelfth street. After this switching has been done the track is also used as a team track for loading heavy freight from cars to teams or from teams to cars. The commissioners' report allowed $2 compensation for the land and $4000 for the improvements. The judgment was for $2 for the land and $6117 for the improvements. The appellant insists that these amounts are inadequate. It contends that the judgment of condemnation is for full street purposes, and gives the appellee the right to use the property of the appellant which is condemned, upon the surface, below the surface and above the surface, whenever the interest of the public requires it, and the city may at any time take possession of the land occupied by the appellant's freight house and deprive the appellant of any right to use its property for any purpose except the passage of trains over existing railroad tracks. There is no contest over the award for the improvements or the question of damages to the remainder, either of land or improvements, not taken. The only question is as to the compensation for the land. The whole of tracts F and G is railroad property already devoted to a

public use and actually used by the appellant for railroad purposes in the operation of its railroad. Counsel agree that the measure of the damage to it is the decrease in the value of its use for railroad property caused by the existence and use of the street. The extent to which the use of the street will interfere with the use of the property for railroad purposes is therefore of vital importance in determining the compensation, and this depends upon the method of such use. The appellant insists that this proceeding contemplates the absolute exclusion of the appellant from the whole of tract F and the serious interference with its use of tract G. The ordinance for the improvement provides that upon the entry of an order by the court granting the city the right to take possession of or damage the property described, and in respect to which compensation shall have been made or deposited as provided by law, the commissioner of public works shall forthwith remove any building or part thereof, or any other obstruction which may be located on the land, and put the surface of the land damaged by the widening of the street in such condition that it can be used for public travel. The judgment of the court provides that upon the payment by the city of the sums of money awarded to the respective owners or persons interested, or upon proof of the deposit of such sums as directed by law, the city shall have the right to take possession of and damage the property in respect to which the said compensation shall have been so paid or deposited.

On the trial, the city, in order to show the manner in which it was proposed to improve the street and the method in which it was proposed to make use of the street after the improvement was made, introduced in evidence a contract between the city and appellant and other railway companies for the construction upon East and West Twelfth street, as widened, of a viaduct one hundred and eighteen feet wide, extending from the Chicago river to a point in the vicinity of Wabash avenue, towards the cost of con-

structing which the railway companies agreed to pay $791,-350, of which the share of the appellant was $56,502.39. Paragraphs 10 and 11 of the contract are as follows:

"10. Nothing in this agreement contained shall be construed as a grant to the city by the railway companies, or any of them, of right of way for the proposed widening of East and West Twelfth street, nor as a grant of an easement for the construction of the said viaduct over any portion of the property of the railway companies or any of them, nor as a license to the city to enter upon the property of the railway companies, or any portion thereof, for any purpose whatsoever, except for the removal of the present viaduct and for the construction of a new viaduct upon land now owned or hereafter acquired for the construction thereof. Nor shall anything in this agreement contained be construed as a waiver by any of the railway companies of its claim or claims for compensation or damage on account of the taking or appropriation of property for the widening of said street or viaduct, it being the intention of this agree-. ment that the city shall acquire any property necessary for such purpose, whether from the railway companies or others, by purchase or condemnation.

"11. Nothing in this agreement contained shall be construed as a surrender or impairment of the present rights of the railway companies, or any of them, to the occupancy of the present East and West Twelfth street with their rail- · way tracks, or as a waiver of any right or rights which they, or any of them, may possess to lay their tracks across, upon, along or over the said East and West Twelfth street, either in its present width or as it shall be when the city shall complete the proposed widening thereof. The right · of each of the railway companies to maintain its existing tracks, buildings, structures and appliances underneath the said viaduct is fully recognized and confirmed, and each of the railway companies shall have the right to extend over said street, underneath said viaduct, additional tracks with-

in its adjacent right of way so extended thereover, and to place thereon and therein such buildings, structures and appliances as it may deem necessary or advisable: *Provided,* such buildings or structures shall not interfere with the free use of said viaduct by the said city or the public: *Provided further, however,* that in any condemnation proceeding which has been or may hereafter be instituted by the city to acquire additional property to be used in widening East and West Twelfth street across the property of the railway companies, nothing herein contained shall preclude any party hereto from setting up any right, if any, which may be conferred by the terms of this agreement to construct or maintain any tracks, buildings or structures beneath said East and West Twelfth street viaduct as completed."

The ordinance for the improvement was passed on April 5, 1911. The petition for the assessment of damages and benefits was filed on April 7, 1911. The ordinance authorizing the viaduct contract was passed July 2, 1914, and the contract was executed September 10, 1915. Counsel for the appellant objected to the introduction of this contract on the ground that it could not be used for the purpose of reducing the amount of the damages to the appellant's property, for the reason that the petition for condemnation provides for the taking of the appellant's property for full street purposes, and not of an easement, merely, for a viaduct. They further maintain that by proceeding to a judgment without amending the petition to show that an easement for a viaduct, only, was granted instead of for full street purposes, the city repudiated the viaduct contract and the appellant by the judgment has been divested of all its rights guaranteed by that contract and may be ousted from all use of the space under the viaduct except for its tracks.

The condemnation of a street over the property of a railroad company, unless the use is in some way restricted, authorizes the use of the street on the surface or above or below the surface, and the use of the street for public travel

on the surface is inconsistent with its use by the railroad company for storing or loading and unloading cars or for the erection or maintenance of freight houses or other buildings. If the judgment of condemnation had been entered upon the petition filed without any restriction of the appellee's rights, the city would have been authorized, upon payment of the compensation allowed, to remove the appellant's freight house from the street and prevent the standing of cars in the street for loading and unloading. It was to avoid this consequence that the viaduct agreement was made, the result of which is to leave the rights of the railway companies in the street undisturbed and not to interfere with their property except to require the buildings to be reduced in height below the level of the viaduct. It is not contended that the city and the railway companies had not the power to make this agreement. The city had the right to determine whether it would improve the street for public travel on the surface or by means of a viaduct, (*Illinois Central Railroad Co.* v. *City of Chicago,* 141 Ill. 586,) and to condemn private property to the extent necessary to the method adopted. The appellant claims that after the viaduct contract was entered into the city should have amended its ordinance and the pending proceedings to conform to that agreement, or should have dismissed the pending petition and begun proceedings anew in accordance with the agreement. It is claimed that it was a repudiation of the agreement to proceed without amending the petition and take a judgment of condemnation in the form in which it was taken, authorizing the petitioner "to take possession of and damage the property" upon payment of the compensation, without any restriction expressly stated in the judgment.

The extent of the injury to the appellant's property depends largely upon the question whether the judgment of condemnation deprives it of the rights which the viaduct agreement was intended to preserve. It has been the rec-

ognized practice in appropriate cases to permit or require the party seeking condemnation to exhibit plans and to introduce evidence showing the manner in which it is proposed to use the easement to be acquired. (*Jacksonville and Savanna Railroad Co.* v. *Kidder,* 21 Ill. 131; *Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway Co.* 105 id. 388; *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 id. 589; *Illinois and St. Louis Railroad and Coal Co.* v. *Switzer,* 117 id. 399; *Suver* v. *Chicago, Santa Fe and California Railway Co.* 123 id. 293; *Elgin, Joliet and Eastern Railroad Co.* v. *Fletcher,* 128 id. 619; *Lieberman* v. *Chicago Rapid Transit Railroad Co.* 141 id. 140; *Eldorado, Marion and Southwestern Railroad Co.* v. *Sims,* 228 id. 9; *Smith* v. *Claussen Park Drainage and Levee District,* 229 id. 155.) The object of the introduction of such evidence is to enable a just estimate to be made of the damages by showing the rights to be taken and acquired by the condemnation. The petitioner is bound by the plans and specifications of the work to be done and cannot depart from them to the injury of the land owner without additional compensation. The plans according to which the work is to be done need not be stated in the petition but may be fixed by stipulation made on the trial. (*Suver* v. *Chicago, Santa Fe and California Railway Co. supra; Elgin, Joliet and Eastern Railroad Co.* v. *Fletcher, supra; Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway Co. supra; Smith* v. *Claussen Park Drainage and Levee District, supra.*) It was therefore not necessary to amend the petition and set out the viaduct contract but it was sufficient to produce it at the trial.

It was not necessary that either the ordinance or petition should set out the particular interest or right sought to be acquired under the proceedings. (*Illinois Central Railroad Co.* v. *City of Chicago,* 138 Ill. 453.) In whatever language the judgment may be rendered the statute will limit its effect to the rights which the statute authorizes to

be condemned, though the court has the power to specifically state in the judgment the nature of the interest vested in the city. (*Illinois Central Railroad Co.* v. *City of Chicago, supra.*) Under the law the city could acquire no more than an easement, and under the decisions which have been cited it was required to adhere to the contract exhibited by it on the trial and introduced in evidence. The judgment, however, contains no limitation upon the city's rights further than those fixed by law. In *Illinois and St. Louis Railroad and Coal Co.* v. *Switzer, supra,* it was said that where the particular plan of construction would materially affect the measure of damages the plan should be presented and preserved in the records of the court so that it might thereafter be known upon what plan of construction the damages were assessed, and if there should be departure from the plan, to the defendant's damage, he might have his remedy for any such increased damage. In *Elgin, Joliet and Eastern Railroad Co.* v. *Fletcher, supra,* where it was held competent for the corporation seeking condemnation to bind itself by an offer made on the trial in regard to the performance of certain acts in connection with the use of the easement, it was said that the judgment in such case should vest the rights obtained by the condemnation subject to the performance of such acts. In this case the court refused to hold that the viaduct contract could not be considered for the purpose of affecting or diminishing the compensation for tracts F and G, and did hold that the easement acquired by virtue of the proceedings would be subject to the provisions of the viaduct contract. These rulings on the law of the case were correct, but the latter was not expressed in the judgment as it should have been. Whatever rights the city has are to be exercised in accordance with the terms of the viaduct contract, under which the right of the railway companies to maintain their tracks and buildings is expressly recognized and confirmed, and this should

be stated in the judgment. This right exists now in the railway companies and has not been condemned, and neither the city nor any other authority or person may take it away or prevent its exercise. If the city hereafter should desire to make use of the surface under the viaduct as a street, it would be possible for it to do so only by condemning the property of the railway companies therein.

The use of the street by the city under the viaduct contract will not interfere with the use of tracts F and G by the appellant in the operation of its railroad, except so far as the warehouse on tract F extends above the level of the viaduct. The warehouse will have to be cut down and readjusted, and this loss has been allowed for and the amount is not complained of, but the appellant contends that it is also entitled to the value of the land for the special use of a warehouse several stories high in connection with its freight house. The appellant, for the purpose of showing the intensified use of railroad property in the neighborhood of Twelfth street by reason of the inability of the railroads to expand upon the surface, offered evidence showing that in constructing freight houses the railway companies were now building them several stories in height, with tracks running underneath, and also offered evidence of the value of tract F for the purpose of erecting a warehouse of that character for railroad purposes and of the value of the space above the viaduct for that purpose. It is insisted that the premises are not mere right of way but are a part of the freight terminal of the appellant, and that they have a special value for that reason which must be taken into account in the fixing of compensation. The rule that the measure of damages when a street is extended across railroad property is the amount of decrease in the value of the use of the property for railroad purposes, caused by the use for the purpose of a street jointly with the use for railroad purposes, recognizes no such distinction as that sug-

gested by appellant. The property of a railroad company used in the conduct and operation of the railroad, whether capable of use for a right of way, only, or for other purposes, is devoted to a public use, and its value to the railroad company is its value for railroad purposes. When a part of it is taken by the State for another public purpose the measure of damages is the reduced value of the property for serving the purpose for which it was previously used; and this is the rule without regard to the character of that use. The fact that it may have been available for use in some other way or for some other purpose is not material, if it was not, in fact, employed in such a way or for such purpose or if such employment were not in immediate contemplation. As was said in the case of *Illinois Central Railroad Co.* v. *City of Chicago,* 169 Ill. 329: "When the right of way of a railroad is put to such special use, or it is in immediate contemplation to put it to such use, its value for the special use to which it is thus put or contemplated to be put is the measure of compensation. But where it is not put to such use its value for such purposes is purely imaginary and speculative, and so remote that its value for that purpose would depend solely upon whether it would ever be necessary for the benefit of the corporation to use it for that purpose. Possible or imaginary uses, or a probable future use dependent on circumstances, are not elements to be taken into consideration in determining the compensation to be awarded." In that case it was shown that part of the land taken was not occupied by tracks and was suitable for special railroad uses and of great value for such uses,—that is, for coal yards, coal chutes and warehouse purposes. The same rule has been stated in other cases where it was proposed to show that part of the property taken was capable of being used for the purpose of erecting warehouses, elevators, coal chutes, freight platforms or a passenger station but such uses were not in present contemplation and were not regarded as affording a

basis for the assessment of damages.  (*Chicago and North-western Railway Co.* v. *Town of Cicero, supra; Illinois Central Railroad Co.* v. *Village of Lostant*, 167 Ill. 85.)  In such cases the value of the land is immaterial, because the basis on which compensation is fixed is not such value but is the decrease in value of the use of the property for rail-road purposes.  (*Chicago and Northwestern Railway Co.* v. *City of Chicago*, 140 Ill. 309.)  Although the appellant owns the property in fee, its ownership is only for the rail-road purposes for which the appellant was incorporated.  It is a possibility that in the future the property may be no longer required for the use of the railway and that it may then be sold for general business purposes.  No present in-tention to abandon the use for railway purposes or to use it in any other way than it is used now has been shown.  The possible present or future use is immaterial.  The ap-pellant has no right to have compensation for the value of the use of the land and at the same time continue to enjoy its use to the same extent as before, without diminution or interruption.  The evidence of the value of the property for the erection of a warehouse, without showing the intention, in good faith, of the appellant to erect such warehouse for use in connection with its railroad, was not admissible.

The judgment was erroneous in not limiting the rights of the appellee in accordance with the viaduct contract.  For this error the judgment is reversed and the cause remanded, with directions to modify the judgment so as to provide that the appellee's rights acquired by the judgment shall, as to the appellant's property, be subject to the terms of the viaduct contract.

*Reversed and remanded, with directions.*