(No. 24490.—

THE VILLAGE OF WINNETKA, Appellee, *vs.* CARROLL D. MURPHY *et al.* Appellants.

*Opinion filed October 13, 1938.*

MASON & MASON, RAYMOND J. GOSS, POPE & BALLARD, and PHILIP J. McKENNA, (GEORGE A. MASON, CHARLES O. BUTLER, and JOHN H. CUMMINGS, of counsel,) for appellants.

TOLMAN, CHANDLER & DICKINSON, (FREDERICK DICKINSON, HOWARD B. BRYANT, and ALEX ELSON, of counsel,) for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

This is an appeal from a judgment of confirmation of special assessments against the property of appellants. The proceedings were brought under section 42a of the Local Improvement act, (Ill. Rev. Stat. 1937, chap. 24, par. 744,) and involve the condemnation and improvement of certain land for a parking lot at a railway station. The strip of land is approximately 750 feet long and 120 feet wide measured at right angles, and lies adjacent to the right of way of the Chicago and Northwestern Railway Company to which it belongs.

On July 21, 1936, pursuant to a resolution of its board of local improvements, the village of Winnetka adopted an ordinance authorizing proceedings to condemn the entire tract and to levy a special assessment to improve it as a parking lot for automobiles. This land lies west of the right of way and is at the railroad station in Winnetka.

The suit was filed August 31, 1936. The report and assessment roll were filed on April 1, 1937. In it the esti-

mated value of the 120-foot strip was fixed at $45,000. Negotiations between the village and Charles P. Megan, trustee of the property of the railway company, resulted in a contract on June 15, 1937, and a separate agreement, the effect of the two being that the village was to pay $45,000 to Megan, as trustee, for the westerly 90 feet of the 750-foot strip. The village was to have the use of the easterly 30 feet until it was needed by the trustee for railroad purposes. The trustee was to build and maintain three wooden stairways on the right of way connecting three sidewalks across the 30-foot strip with the station platform. If it became necessary to take the 30-foot strip for railroad purposes, or to remove the wooden stairs, some other adequate means of access to the platform was to be provided.

Without in any way amending the ordinance authorizing the filing of the petition for special assessment and condemnation, a judgment was rendered on July 15, 1937, in the condemnation proceeding, and the terms of the agreements between the railway's trustee and the village were incorporated in that judgment. The value of the land taken was fixed at $45,000. The objectors' motions for a jury trial and to offer evidence on the question of compensation were denied.

The Village of Winnetka and Joseph W. Hicks have moved to dismiss this appeal because Charles P. Megan, trustee, and certain other defendants and objectors were not served with a notice of appeal, and were not named as defendants and appellees in the notice of appeal.

Section 56 of the Local Improvement act, as amended in 1935, (Ill. Rev. Stat. 1937, chap. 24, par. 758,) provides that in special assessment proceedings the "judgments shall have the effect of several judgments as to each tract or parcel of land assessed, and no appeal from any such judgment shall invalidate or delay the judgments, except as to the property concerning which the appeal is taken."

A special assessment against land is a judgment *in rem*, (*St. John* v. *City of East St. Louis*, 50 Ill. 92; *Gibler* v.

*City of Mattoon,* 167 id. 18;) and the reversal of the judgment on appeal benefits only the objectors who were appellants. (*Harman* v. *People,* 214 Ill. 454; *Goldstein* v. *Village of Milford,* 214 id. 528.) Section 66 of the Local Improvement act remains the same as it was when *Harman* v. *People, supra,* was decided. That case involved an application for judgment and order of sale, and we said, quoting from section 66, "no errors in the proceeding to confirm, not affecting the power of the court to entertain and consider the petition therefor, shall be deemed a defense to the application herein provided for."

The contention that the appellants were required to serve a notice of appeal on all other parties to the special assessment proceeding besides the Village of Winnetka and to name them all as plaintiffs and defendants in the notice of appeal, is based on appellees' construction of our rules 33 and 34. Rule 33 then provided that the parties must be named in the notice of appeal as they were in the trial court, and rule 34 that a copy of the notice of appeal should be served on each appellee and upon any co-party who did not appear as appellant. Where, as here, an appeal is taken from separate and distinct judgments, these provisions concern only the parties to those judgments. If this were an appeal from an order overruling a tax objection in the county court, the appellant would not be required to name all other objectors as parties to the appeal, nor to serve such objectors with a notice of appeal. The argument is without force, that objectors not appealing should have been served with a notice of appeal so that they might have appealed at less expense.

Appellee contends that since the village has the right to dismiss the whole proceeding within sixty days after the judgment on appeal, and that a reversal of the judgments appealed from might induce such action, the owner of the property condemned should have been made a party to the appeal, and should have been served with a notice of appeal.

The village had a right to dismiss within ninety days after final judgment, if no appeal had been taken, and neither of these provisions makes the owner of the land condemned a party in interest in the several judgments against the lands of the objectors. The possible adverse effect of a reversal is too remote and too contingent to require the owner of the condemned land to be made a party to an appeal by objectors. The motion to dismiss must be overruled.

Appellants contend that the village did not comply with section 53 of the Local Improvement act which provides that no special assessment shall be made for any local improvement until the land necessary therefor has been acquired and is in possession of the municipality, except in cases where proceedings to acquire such land have been begun and have proceeded to judgment. They say that as to the easterly 30 feet of the 750-foot strip, title remained in the railway company and that all the village acquired was the permissive use of this 30 feet until such time as the trustee or the company decided that this strip was needed for railroad purposes. The two agreements of June 15, 1937, show that this is true. In *City of Chicago* v. *Green,* 238 Ill. 258, we held that section 53 was not complied with. There the canal commissioners adopted a resolution "that the application of the city of Chicago for permission to lay a sewer in Kedzie avenue, across the right of way and under the bottom of the Illinois and Michigan canal by means of a siphon, be and the same is hereby granted."

In *City of Park Ridge* v. *Wisner,* 253 Ill. 434, the improvement included a mile of sewer to be laid in a road outside the city. The city had acquired from the highway commissioners the right to lay the sewer in the south half of the highway, so far as the public easement was concerned, but had not acquired that right from the owners of the fee. At page 437 we said: "It is not a compliance with section 53 to acquire the right of one who has merely an easement in land, but the section means that all rights and

interests therein must be acquired, so that a municipality will have an absolute right to construct and maintain the contemplated improvement."

The village relies on *City of Berwyn* v. *Berglund,* 255 Ill. 498, in which the town of Cicero, by ordinance, granted to the city of Berwyn the right to lay a sewer in a public street. We said the right acquired was not a mere license but was a grant of a permanent easement, and the possibility of reverter in case the street was vacated was not an estate having a present existence, and was not such an outstanding interest as must be acquired before the city could be said to have complied with section 53.

In the case before us the railway company retains its ownership of the 30 feet of ground. The village has only a permissive use, and it is no answer to say that in case the railway company resumes possession and makes use of the 30 feet for its purposes, the village will be furnished access to and egress from the station platform either by the three wooden stairways or some other means.

. The appellants also contend that the village abandoned the original local improvement, and proceeded to make an entirely different one when it entered into the agreements with the trustee of the railway company's property, under which only 90 feet of the 120-foot strip was condemned. They rely on *St. John* v. *City of East St. Louis,* 136 Ill. 207. In that case we held that the adoption of an ordinance providing for the erection of a viaduct 36 feet wide in a street which an earlier ordinance provided should be improved with a 48-foot pavement, worked a repeal of the paving ordinance or so changed it that there was no valid ordinance to support the special assessment for paving.

In *Pells* v. *People,* 159 Ill. 580, the original ordinance provided for a pavement 61 feet wide and after confirmation of the assessment an ordinance was passed calling for a pavement 53 feet wide. We held that this was an abandonment of the former proceedings and that a new estimate,

levy of assessment and confirmation were required. In *City of Chicago* v. *Ayers*, 212 Ill. 59, although there was no additional cost to the parties whose property was assessed, we held that substituting a pavement 64 feet wide for one 50 feet in width, was a substantial departure that would defeat a supplemental proceeding for a deficiency assessment. See, also, *City of Chicago* v. *Jerome*, 301 Ill. 587, and *Gage* v. *People*, 200 id. 432.

The village relies on *Thompson* v. *City of Highland Park*, 187 Ill. 265, but in that case, while the special assessment proceedings were pending, the city caused the assessment against appellants' property to be reduced proportionately by the amount the street railway company would be required to expend in paving the street under the later ordinance which gave it the right to occupy the west roadway of St. John avenue. We distinguished the case from *St. John* v. *City of East St. Louis*, 136 Ill. 207, and the *Thompson case* is not in point here.

Appellee also relies on the Twelfth street cases. The first of these is *City of Chicago* v. *Lord*, 276 Ill. 571, and the other three are found in volume 277 of our Reports. The point made is that it was held proper in those cases to pass a condemnation ordinance, begin the condemnation suit, and pass collateral ordinances, including one authorizing the city to contract with railroad companies and to permit those companies to continue to occupy the ground below a viaduct with buildings, existing tracks and tracks to be built, all to be used for railroad purposes. The easement of the city for its viaduct was in no way restricted or abridged by the concessions made in the contracts with the railroad companies, but in the case before us the village undertook to condemn 120 feet and by its agreements with the trustee of the railway company, and the condemnation judgment which embodied the terms of those agreements, obtained an easement to but 90 feet. The difference in procedure under section 42a of the Local Improvement act,

permitting the special assessment proceeding and the condemnation proceeding to be had in the same action, is immaterial. The point is, this is not the improvement project called for by the ordinance.

For the reasons that section 53 was not complied with as to the 30-foot strip approximately 750 feet long, and that the improvement for which appellants' property was assessed is not that called for in the ordinance passed by the village of Winnetka, which was never amended, the judgments against the lands and lots of appellants are reversed.

*Judgments reversed.*