THE WEST CHICAGO MASONIC ASSOCIATION

*v.*

THE CITY OF CHICAGO.

*Opinion filed April 17, 1905.*

1. EMINENT DOMAIN—*jury should consider fact that re-construction of building must comply with city ordinances.* If in a proceeding to condemn land to widen a street the improvement requires the removal of the front of a building for one-third of its depth, the defendant is entitled to have the jury instructed that if the building is susceptible of re-construction such re-construction must be subject to the ordinances of the city, which, under the evidence, would require heavy re-enforcement of the standing walls.

2. SAME—*what the jury must consider in awarding damages for taking part of building.* In awarding damages for the taking of a portion of a building for the purpose of widening a street, the jury must either consider the remainder worthless and allow the whole value of the building or consider what can be done with the remainder and the cost of doing so.

3. SAME—*what evidence should be admitted on the question of benefits.* In a condemnation proceeding to widen a street, if a witness for the city testifies that the widening of the street would benefit the property and bring business into the street as widened, the defendant is entitled to have the jury informed whether the witness had taken into account that defendant would have to pay for a new pavement and sidewalk, or whether he based his estimate on a finished street.

4. SAME—*what should be considered by the jury on question of damages and benefits.* In a condemnation proceeding to widen a street the defendant is entitled to have the jury consider the fact that a new pavement and sidewalk will have to be built and the fact that such improvements are made in the city at the entire expense of the property owners.

5. INSTRUCTIONS—*inadvertent use of wrong word not ground of refusal.* The inadvertent use of the word "is" instead of "if" in an instruction is not ground for its refusal by the court, if the meaning is plain notwithstanding the error.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

JOHN C. RICHBERG, (RICHBERG & RICHBERG, of counsel,) for appellant.

ROBERT REDFIELD, and FRANK JOHNSTON, Jr., (EDGAR B. TOLMAN, Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee filed in the superior court of Cook county its petition, making appellant and others defendants, praying the court to ascertain the just compensation to be paid for private property to be taken or damaged for the widening of West Randolph street from Halsted street to Sangamon street, by taking thirty-five feet from the abutting property on each side of the street and making it one hundred and fifty feet wide instead of eighty, and to ascertain what property would be benefited by such improvement and the amount of such benefit.

West Randolph street for two blocks, from Desplaines street to Halsted street, is one hundred and fifty feet wide. The center portion of it was originally occupied for a public market and afterward for a hay market, and the center along the street car tracks is now devoted to the general purposes of a produce and truck market, the truck gardeners being allowed to occupy it, under an ordinance of the city, during certain hours of the day. Around this market a produce and commission business has been built up, so that there is a demand for stores to carry on that business beyond the present capacity of the street at that place. Although it does not appear on the face of the ordinance, the real purpose of widening the street further west is to adapt it to the produce and commission business and to extend that business and the market place west. At the west end of the present market appellant owns property on the south-west corner of Randolph and Halsted streets, fronting seventy-seven feet on Randolph street and one hundred feet on Halsted street, with an eighteen-foot alley at the south end. It is improved by a four-story and basement brick building with stone trimmings. The basement and first floor are occupied for busi-

ness purposes, the second floor for offices, and the third and fourth for the use of the Masonic bodies comprising the association. Being next to the present market, it is the first piece of property on the south side to be taken for the widening of the street. Commissioners were appointed, who made a report showing the total value of all the land taken for the improvement to be $314,103.70; that there were no damages to property not taken and no benefits to the city of Chicago, and assessing benefits to the remainder of each piece of property equal to the value of the property taken, so that the owners were paid for their land taken in benefits to what was left. As to appellant's property, they reported the just compensation to be paid to it for the thirty-five feet taken as $20,825 and assessed back upon the remaining sixty-five feet $20,825 for benefits, balancing the compensation with the benefits. They allowed for damages to the building on the property $19,244.85. The appellant filed objections to the amounts allowed and to the assessment, which were tried before a jury, resulting in a verdict finding the issues for the appellee and that the property was not assessed more than it would be benefited. The jury allowed for the land taken $20,825, assessed the remainder for benefits the same sum, $20,825, and allowed for damages to the building $27,037.89. The court, after overruling a motion for new trial, entered judgment on the verdict.

Appellee proposed to take thirty-five feet from the front of appellant's building, which had a frontage of seventy-seven feet on Randolph street and one hundred feet on Halsted street, and leave the remainder of the building with the same frontage on Randolph street and running back only sixty-five feet. This would destroy the arrangement of the building and practically destroy it for the purposes for which it was erected; but appellee claimed that the premises could be devoted to new uses for the produce and commission business, which would be extended westward when the street should be widened. If the building stood, it would be neces-

sary to construct a new front, and there was testimony for appellee by which the damage to the building was estimated on the basis of thirty-five-hundredths of its total value and the cost of constructing a new front and adjusting the inside of the building. Appellee introduced evidence of the cost of re-constructing the front wall, and also other testimony that it would not pay to re-construct it, but that it would be better to put up a new one adapted to the commission business. Such a building could be built of what was called mill construction, with bare walls and a loft overhead, which would be suitable to the commission business and comparatively inexpensive. Such a building would not cost one-third as much as the existing building, but would only be adapted to the produce and commission business and not worth more than one-third the value of said existing building. The question was presented to the jury whether it would be better and more profitable to appellant to demolish the remainder of the building after appellee had taken away the front or to attempt to re-model it. It was proved that the walls of the building were not as heavy as required by the existing city ordinance, and that in the case of re-construction the walls would have to be heavily re-enforced to comply with such ordinance. The jury were called upon to settle the question whether they should allow the entire value of the building as damages, on the ground that it would have to be demolished, or whether the remaining portion could be re-constructed and therefore had some value, and it was proper that they should be advised that in any re-construction of the building the city ordinances would have to be complied with. Appellant asked the court to instruct the jury that when the entire front of the building should be taken to a depth of thirty-five feet, if the remainder of the building was susceptible of re-construction it would have to be re-constructed subject to the ordinance of the city of Chicago regarding the erection of buildings. The court refused to give the instruction, and in this we are of the opinion the court erred. The instruction

related to a matter of law and its correctness is not disputed, but counsel for appellee say that they fail to apprehend why there should be an increased cost of construction because the building would have to be re-constructed in accordance with the building ordinance. This question is answered by the evidence that the standing walls would have to be heavily re-. enforced and made as heavy and thick as required by such ordinance, which would involve increased cost. If the building is to remain with thirty-five feet of the front demolished and no front wall or re-construction or new adjustment of the inside, it is clear that the verdict was wrong, because only a portion of the value of the building was allowed. There was no evidence which would justify the verdict unless the remaining portion would be of great value, and that could only be so in case a front wall should be built and there should be a re-construction and re-arrangement. In determining the amount of damages the jury must either consider the remainder worthless and allow the value of the whole building, or consider what could be done with the remainder and the cost of doing it. Counsel further say that the wording of the instruction is confusing and the idea inaccurately expressed. In the abstract the word "is" is printed for "if," but the meaning of the instruction was plain enough, and the accidental use of one letter for another would not justify the court in refusing it.

On the cross-examination of a witness for appellee who testified that the widening of the street would benefit the property and bring the produce and commission business into the street as widened, counsel for appellant endeavored to ascertain whether the witness considered that the appellant would be compelled to pay for a new pavement of the street and a new sidewalk. The court sustained objections to the questions, and in doing so erred. The jury had a right to be informed whether the witness' estimate of benefits was based on a finished street, with pavement and sidewalk, and whether he took into account that appellant would be com-

pelled to practically make a new street by paying for a new pavement and new sidewalk. Appellant was also entitled to bring those facts before the jury, and the fact that all such improvements were made in the city of Chicago at the entire expense of the property owners, to enable them to determine the amount of damages and benefits.

Appellant complains that the court overruled its objection to the apportionment of the cost of the improvement between the public and the property owners, and insists that the provision of the statute prohibiting a review on error or appeal applies only to special assessments proper, and not to a proceeding where there is a condemnation of property. The record shows no objection of that kind, the only one contained in the abstract relating to the subject being that the improvement is a public one and a public benefit. There was no hearing or any evidence on the subject of the apportionment, and there is nothing in the record to review on that question.

We are of the opinion that the verdict was clearly against the evidence, but as the case will be tried again we will refrain from extensive comment on that feature of the case. While the proceedings, on their face, only purport to be for the widening of the street, the actual purpose shown by the evidence is to extend the produce market and commission business further west. The benefits which appellee claimed would be received by the remainder of the property, and the evidence of such benefits, related wholly to increased revenue because the property could be rented to produce and commission merchants. No witness presented any estimate of benefits or any theory that the property would be benefited except upon the ground that the market would be extended west and there would be a demand for produce and commission houses. It was not the theory of any witness that a lot sixty-five feet deep fronting on a street one hundred and fifty feet wide is worth as much as a lot one hundred feet deep fronting on a street eighty feet wide merely be-

cause of the width of the street, but the theory of every witness for appellee was that the produce market would be extended and the anticipated benefits were to result from such extension. Following that theory, the commissioners and jury, by a purely arbitrary plan, assessed back upon the remainder of each lot throughout the length of the improvement the amount allowed as compensation, so as to make the improvement pay for the land taken. The amount of the valuation was balanced by alleged benefits bestowed on the remainder of the lot, regardless of the situation of the property. Appellant's property already fronted on the market to the extent of thirty-five feet at the west end of it and had at least a portion of the advantages to be derived from frontage on the market, but the benefits were assessed upon precisely the same plan of making the remainder of each piece of property pay for the part taken as in the case of property further west and distant from the market. One-third of the front of the building was to be demolished, and it is clear that this would be a destruction of the whole building for the purposes for which it was built and used. It is, of course, impossible to tell whether the jury adopted the theory which the evidence shows appellee insisted upon at the trial, that the award should be made on the basis that appellant should put up an inexpensive "mill construction" building for the commission business, which would have but little actual value as compared with the building destroyed, or whether the award was based on a re-construction and re-arrangement of the building. If the view of the jury was that the whole building would be demolished the verdict was against all the evidence; and if it was on the other theory, it was against the clear preponderance of the evidence.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*