(No. 20106.—

THE CITY OF CHICAGO, Appellee, *vs.* PHILIP KOFF *et al.*— (FRED A. NEVILLE, Appellant.)

*Opinion filed June 20, 1930—Rehearing denied December 17, 1930.*

Daniel S. Wentworth, (Deneen, Healy & Lee, and Henry O. Nickel, of counsel,) for appellant.

Samuel A. Ettelson, Corporation Counsel, Gotthard A. Dahlberg, Joseph J. Sullivan, and Joseph J. Thompson, for appellee.

Mr. Justice Stone delivered the opinion of the court:

This is an appeal to review a judgment for an award made by a jury in the superior court of Cook county for the taking of the property of appellant in a proceeding for the widening of Western avenue between Fullerton and North avenues, in the city of Chicago.

Appellant's property consists of a tract of land almost triangular in shape, the west line of which is fifty feet in length and abuts on the east line of Western avenue. The northeasterly line extends from the north end of the west boundary of the tract in a southeasterly direction along the southwesterly boundary of the right of way of the Metropolitan Elevated railroad a distance of approximately sixty-two feet, thence at right angles in a southwesterly direction

fifteen and a fraction feet to a point thirty-two and a fraction feet east of the south end of the west boundary line of the tract, thence west to said south end of said west boundary line. It is proposed in the widening proceeding to take the west seventeen feet of this tract, leaving a tract of the same irregular shape but with a frontage on Western avenue, as widened, of approximately thirty-five feet, with a depth back from the street of fifteen feet. Appellant's premises are now improved by a four-story brick structure. The first floor consists of two store rooms, and the remaining three floors each constitutes an apartment of six rooms. The jury returned a verdict of $12,500 as damages for property taken and no damages to property not taken. It was conceded on the hearing that the entire building will be destroyed and that the remaining tract of land will be suitable only for a small one-story store building.

Appellant assigns as error the order of the court permitting the jury to view the premises, the rulings denying to him the right to show damages for expense and deprivation of the use of the remaining portion of the property during the destruction of the building and the rehabilitation of such remaining portion, and rulings on evidence and instructions to the jury.

The petition for the widening of Western avenue was filed on April 23, 1925. The hearing thereon was begun September 19, 1929, and the argument is that view by the jury was entirely misleading and of no assistance to the jury for the reason that the building was not in the same condition when viewed as in April, 1925, or December, 1925, when the commissioner's report was filed, because of non-use and depreciation due to the pending condemnation proceedings and a foreclosure of the mortgage thereon, which was brought in 1928. Appellee argues that it was entitled, under the law, to have the jury view the premises, and that the jury were entitled to consider their view as evidence. The view by the jury was ordered under sec-

tion 25 of the Local Improvement act. (Smith's Stat. 1929, p. 506.) That section is as follows: "The court may, upon the motion of the petitioner, or of any person claiming any such compensation, direct that the jury, (under the charge of an officer) shall view the premises which it is claimed by any party to said proceeding will be taken or damaged by said improvement," etc. Appellant argues that while a view of the premises by the jury is a matter discretionary with the court, yet in the instant case, by reason of the great change that had taken place in the premises after the filing of the petition for the widening of Western avenue, it was an abuse of discretion to permit such view. Counsel for the city reply it is the practice in all cases where property is taken for public use to permit a view of the premises by a jury, and cite section 9 of the Eminent Domain act, which provides that the jury shall, at the request of either party, view the premises. Counsel for appellant also argue that even where view is permitted under a statute, such as the Local Improvement act, and under such facts as to show it was not an abuse of discretion, such view is only for the purpose of permitting the jury to better understand the evidence offered on the trial and can not be considered by the jury as evidence. Counsel for appellee, on the other hand, say that this court is committed to the rule that such view may be considered by the jury as evidence. These contentions bring us to a consideration of the power of the court to order the jury to view the premises and the effect of such view by the jury.

Under the early common law, view by the jury was permitted in certain actions affecting real estate. The purpose was to enable the jury better to understand the matter in controversy between the parties. It was likewise allowed in certain personal actions for injury to realty, such as trespass *quare clausum fregit,* trespass on the case, nuisance, and the like. (Stearns on Real Actions, p. 102.) Under the original practice, view was permitted only after the

cause had been tried, and then only where the court perceived the issues of fact concerning the property affected to be obscure. This method of permitting view by the jury often resulted in delays and expense, and by statute 4 and 5 Anne, (chap. 16, sec. 8,) courts at Westminster were empowered to grant a view, in the first instance, prior to the trial. (1 Burr. notes, 253; 2 Tidd's Practice, 795; Sellon's Practice in King's Bench.) Though the statute 4 and 5 Anne (chap. 16, sec. 8,) was passed subsequent to the fourth year of James I and was therefore not adopted as a part of the common law in this State, the practice provided by it has become established in common law jurisdictions,—*i. e.,* of permitting the jury to view the property prior to or during the trial where permitted at all. Under the common law, view by jury was allowed or not, as the court, in its discretion, determined. Its purpose was to better enable the jury to understand and apply the evidence introduced at the trial and to clear up any obscurities existing in the application of the evidence. The jury were not, under the common law, authorized to consider as evidence any facts bearing upon the controversy which were derived from such view but the issue of fact was to be determined from the evidence offered on the trial, the reason being, that if the jury be allowed to consider their view as evidence, reviewing courts would not know upon what the jury based their finding or determine whether it was based on competent evidence or upon the consideration of incompetent matters that were not admissible under the issue. For these reasons the view by the jury, at common law, was committed to the sound discretion of the trial court, which discretion was subject to review for abuse. That practice has been recognized in this State. (*Osgood* v. *City of Chicago,* 154 Ill. 194; *Vane* v. *City of Evanston,* 150 id. 616; *Springer* v. *City of Chicago,* 135 id. 552.) Section 25 of the Local Improvement act, hereinbefore quoted, is but declaratory of the common law and in nowise changes that

practice. View by the jury in such a case is for the purpose of enabling them better to understand the evidence, and such view is not to be treated as evidence. *Rich* v. *City of Chicago,* 187 Ill. 396.

Counsel argue, however, that this court has frequently held that view by a jury is to be considered as evidence or as in the nature of evidence, and they cite numerous cases in which it has been held by this court that where the evidence is conflicting and the jury have viewed the premises the verdict of the jury will not be disturbed. These cases were brought under the Eminent Domain statute, which changes the common law in that it requires a view of the premises at the request of either party. *City of Chicago* v. *Chicago Title and Trust Co.* 331 Ill. 322, was an eminent domain proceeding for the condemnation of property for a school site. *Rock Island and Peoria Railway Co.* v. *Leisy Brewing Co.* 174 Ill. 547, was an eminent domain proceeding for a railroad right of way. The latter case holds that view by the jury is in the nature of evidence and may be considered by the jury in making up their verdict. To the same effect was *County of Mercer* v. *Wolff,* 237 Ill. 74, an eminent domain proceeding for condemnation of a jail site, and *Lanquist* v. *City of Chicago,* 200 Ill. 69, another eminent domain case for condemnation of a school site. Of the same character and to the same effect are *Public Service Co.* v. *Leatherbee,* 311 Ill. 505, *Jefferson Park District* v. *Sowinski,* 336 id. 390, and *Forest Preserve District* v. *Dearlove,* 337 id. 555. It is, however, held as to eminent domain cases, that the jury may not ignore the evidence and fix compensation and damages contrary thereto. In such cases it is only where the evidence is conflicting that the jury may draw their conclusions from view, and even then a verdict beyond the maximum, or less than the minimum fixed by the testimony, will not be sustained. *City of Chicago* v. *Witt,* 289 Ill. 520; *Chicago, Ottawa and Peoria Railway Co.* v. *Rausch,* 245 id. 477.

Counsel for appellee argue that as both actions, those under the Eminent Domain statute and those under the Local Improvement act, are proceedings in which private property is taken for public use, the practice under the Eminent Domain act as to view by the jury should be applied in this case. With this, however, we cannot agree. Sections 13 to 33 of the Local Improvement act provide in detail the proceeding in cases where private property is to be taken for a local improvement and in material respects differ from the Eminent Domain act. As we have seen, the Local Improvement act does not depart from the rule of the common law with reference to a view of the property by the jury, and the common law rule, therefore, applies.

It was a matter within the discretion of the trial court to permit or deny a view of the premises, subject to review for abuse of that discretion. Was it an abuse of discretion to permit the jury to view the premises in this case? The objection was made to such view on the ground that since the filing of the petition to widen Western avenue the property had deteriorated because of appellant's inability to lease it advantageously by reason of the existence of the widening proceedings and that in 1928 a receiver had taken charge under the mortgage, with the result that at the time of the hearing the building, and particularly the three floors of apartments, had become very much deteriorated, were vacant and windows and fixtures were broken, and that the jury, therefore, could get only a most unfavorable impression from the view of it, and that since the values were to be fixed as of the time of the filing of the petition for the taking of the property and the hearing was more than four years later, it was an abuse of discretion to permit the jury to view the premises. Much valid objection may be seen to a view by the jury in a case of this character. There is no method by which there may be preserved in a bill of exceptions the evidence of the manner in or extent to which the minds of the various members of the jury were im-

pressed by a view of a building, and where, as here, such changes have taken place as to render a view of no assistance to the jury for the reason that the condition at the time of the trial does not reflect the value as of the time the petition was filed, it is an abuse of discretion to permit such view. It will be conceded that a photograph which does not present a true picture of an object as of the time to which the evidence concerning it relates is not admissible in evidence except it be with a full explanation of the changes, and we are of the opinion that in this case the building showed such deterioration that a view of the premises should not have been permitted. Such view could scarcely have been said to be of assistance to the jury in understanding the evidence offered as to the property.

Appellant also complains of the ruling of the court refusing to permit him to show damage by reason of deprivation of the use of the remainder of the property during the destruction of the building and the rehabilitation of the remaining portion of the lot, and in holding that he was not entitled to the cost of a new sidewalk and paving in front of the remaining portion of the premises. The latter two items were by stipulation fixed at $150 for the sidewalk and $258 for paving. Appellee replies that under *Osgood v. City of Chicago, supra,* appellant is not entitled to show these items as elements of damage because they are but the inconveniences generally suffered from improvements of that character. In the *Osgood case* the action was for damages to property by reason of constructing a viaduct. The viaduct was constructed entirely in the street and was not an invasion of the property, did not take the property of Osgood, and that case is therefore not analogous to the instant case, where a portion of the property of appellant is being taken for a public improvement. In all cases where private property is taken for public use, the compensation to which the property owner is entitled is the amount of money necessary to put him in as good condition financially

as he was with the ownership of the property. Nothing short of that amount conforms to the constitutional requirement of just compensation, and it is idle to say that where a man loses the use of the remaining property for business purposes, or is compelled to incur an expense either to tear down the remaining portion of a building, or to build a sidewalk and pavement in front of such remaining portion where a good sidewalk and pavement had existed prior to the taking of part of the property, such are not elements of damage to him for which he must be compensated if he is to be returned to as good condition financially as he enjoyed before the improvement was made. Where the entire property is taken there is no remainder, and so, of course, no deprivation of use of a portion or expense to be incurred to render such portion again usable, for the very simple reason that there is no remaining portion. Where, however, a part of a tract of land is to be taken for public use, the measure of damages is the decrease in the value of the estate by reason of the taking, and this includes not only the value of the part actually taken but the injury to the remaining land, if such is shown. Loss of use of the remaining portion, delay and cost in rehabilitating that portion, and expense of sidewalk and pavement in front of it, are matters proper to be considered in cases where a part of the premises is to be taken. In a proceeding such as this there are numerous items of injury to the remaining portion of the premises for which the owner is entitled to be compensated. In the first place, he must be paid the value of the land taken—its fair cash market value for its highest and best use, (*Village of Oak Park* v. *Hulbert,* 307 Ill. 270,) and this without regard to the effect on the remainder. The rental value of the property is proper and important to be considered in determining the fair cash market value, and the effect of the condemnation proceedings on the rental value of the property where a part or front of a building is taken for street widening. The jury,

in assessing damages, should either consider the remaining part of the building worthless and allow the whole value of the building, or consider what could be done with the remaining portion of the building and the cost of putting it in condition for use. (*West Chicago Masonic Ass'n* v. *City of Chicago*, 215 Ill. 278.) It is proper to take into consideration as damage to land remaining after the severance of the part taken, damages to business or income of the remaining portion, interruptions of business, inaccessibility to the remaining portion, removal of debris of portion of building remaining, and, in short, all matters arising out of the proceeding which affect the value of or the income from the remaining portion during the period in which the owner has no access to it. (*Herrin and Southern Railroad Co.* v. *Nolte*, 243 Ill. 594; *Metropolitan West Side Elevated Railroad Co.* v. *Siegel*, 161 id. 638; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Hock*, 118 id. 587; *Chicago, Peoria and St. Louis Railway Co.* v. *Eaton*, 136 id. 9; *Chicago, Burlington and Quincy Railroad Co.* v. *City of Naperville*, 166 id. 87; *Village of Bradley* v. *New York Central Railroad Co.* 296 id. 383; *St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Capps*, 67 id. 607.) In this case the court refused to permit appellant to show some of these elements of damages, evidently treating the issues as though raised on a proceeding to take the entire property. This was error.

It is also urged that the court erred in instructing the jury. Under the view hereinabove set forth we are of the opinion that on a re-trial such errors in instructions will not recur, and it is therefore unnecessary to go into detail concerning them. It is sufficient to say that the instructions complained of represented the view of the court and were erroneous for the reasons hereinbefore set out.

It is also argued that the evidence does not sustain the verdict of the jury. There were offered on behalf of appellant three witnesses who testified to the value of the land taken, independent of improvements. Their testimony

ranged from $12,000 to $18,000 as the value of the entire tract of land and from $9650 to $13,000 for the land taken. The testimony of appellant's witnesses as to the value of the building was that, considering the depreciation for usage and age, the so-called "sound value" of the building on the premises was approximately $22,600. Appellee offered four witnesses who testified that the value of the entire premises, including the building, was from $13,000 to $15,000 and that the part taken had a value of $12,500, the amount found by the jury. Two of these witnesses did not give values of land and building separately and indicated by their testimony that they were not considering the "sound value" of the building,—*i. e.*, its replacement cost, less depreciation. Two of appellee's witnesses, however, testified that the so-called "sound value" of the building on the premises was $14,136.75. We are unable to understand from these figures how the witnesses for appellee could have considered that taking two-thirds of the land and destroying the entire building could be of a value only of $12,500, when the "sound value" of the building on the premises, according to two of appellee's witnesses, was over $14,000. Certain it is that the building improved the land to some extent. The evidence shows that in December, 1925, the annual rental of the building amounted to $2640. One of appellee's witnesses testified that in appraising the value of improved lands one approved method is to take seven times the amount of the income as the value of the premises. On that basis the value would amount to over $18,000. It seems necessary, therefore, that the question of value should be heard by another jury.

For the reasons herein given, the judgment of the superior court of Cook county is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded, with directions.*