(No. 29732.—

THE CITY OF CHICAGO, Appellee, *vs.* IRENE H. CALLENDER
*et al.*—(CHICAGO POST OFFICE SERVICE BUILDING COR-
PORATION, Appellant.)

*Opinion filed January 22, 1947—Rehearing denied March 17, 1947.*

Gunn, C.J., and Wilson, J., dissenting.

Deming, Jarrett & Mulfinger, and George P. Latchford, Jr., (C. W. Mulfinger, of counsel,) all of Chicago, for appellant.

Barnet Hodes, Corporation Counsel, William H. Sexton, and Frank S. Righeimer, (Frank S. Righeimer, Jr., of counsel,) all of Chicago, for appellee.

Mr. Justice Smith delivered the opinion of the court:

This is an appeal by Chicago Post Office Service Building Corporation from a judgment of the circuit court of Cook county. The judgment was entered in an eminent domain proceeding, instituted by the city of Chicago. The property was sought to be acquired in a program to widen West Congress street. The property involved is located at 1015 to 1055 West Congress Street. It is a parcel of ground fronting 400 feet on the south side of Congress street, and is 150 feet deep. The land is improved with a three-story and partial basement reinforced concrete garage-type building. It was constructed seventeen years prior to the date the petition was filed. The building itself fronts 382 feet on Congress street and has a depth of 148 feet. The east 18 feet of the property is vacant. Of this property the city sought to acquire the north 100 feet. The building was equipped with concrete reinforced

ramps, two freight elevators of 20,000 pounds capacity, and other equipment suitable for heavy garage purposes. The floor area of the entire building is approximately 170,000 square feet. The ramp and approaches occupy approximately 15 per cent of the entire floor area. The building was especially designed and constructed for the use of the United States Post Office Department as a garage. It was so occupied for ten years. Since it was vacated by the Post Office Department only a part of the first floor has been used for garage purposes. At the time the petition was filed the ground floor was being used by multiple tenancies, some for garage purposes, and the upper floors were being used for the storage of paper boxes. The construction and arrangement of the building is such that it is unsuited for general commercial purposes. The entire parcel of ground was described in the petition, but the petition described the part sought to be taken as the north 100 feet of the block.

Appellant appeared and of its own motion filed a cross petition for damages to land not taken. On the same day it obtained leave to file an amended cross petition, which it filed on the following day. Upon the filing of the amended cross petition, on motion of the petitioner, appellant was ruled to file a bill of particulars as to the claims in its amended cross petition for damages to property not taken. In the bill of particulars filed, it set out two theories relative to the damages claimed by it to the portion of the property not to be taken. The first theory was that the taking of the north 100 feet of the building and ground would leave the part of the building remaining, only 48 feet in depth, with 382 feet frontage on Congress street; that appellant was entitled to the cost of constructing a new north wall and other reconstruction, alterations and adjustments necessary to rehabilitate the portion of the building remaining, in accordance with plans which it had procured, plus the loss of rentals during the period of reconstruction.

The second theory was that the portion of both the land and building remaining after the north 100 feet was taken, would be of no value and could not be reconstructed so as to make it usable; that appellant was entitled, for that reason, to recover as damages to the land not taken, the cost of removing the portion of the building not taken, which was estimated at $81,000, less the value of the land not actually taken, after the building was removed, which was estimated at $20,000. Upon a trial the jury fixed the compensation for the property taken at $215,000, and the damages to the remainder at $35,000.

It is first complained that it was error for the court to require appellant to file a bill of particulars. It is argued that all of the property, that is, the entire block, was described in the petition and, that being true, no cross petition was necessary to entitle appellant to recover damages to the lands not taken. The answer to this contention is that appellant did, of its own motion, file a cross petition for damages to the property not taken. It is not now in a position to complain because it did so. As to the objection that the court erred in requiring it to file a bill of particulars designating the damages claimed under its cross petition, we regard this action of the court as wholly unimportant. Requiring a bill of particulars is, under section 37 of the Civil Practice Act, (Ill. Rev. Stat. 1945, chap. 110, par. 161,) largely a matter in the discretion of the trial court. It does not appear from the record that the court abused its discretion or that appellant was in any way prejudiced or injured by the order of the court requiring it to file a bill of particulars, specifying the character of the damages claimed under its cross petition.

In the trial of the cause the petitioner proved the value of the entire tract of land owned by appellant. Its witnesses fixed the value at from $210,000 to $215,000. It conceded that the fair cash value of the north 100 feet of the property, which was the part sought to be taken, was

the same as the fair cash value of the entire property owned by appellant. In other words, petitioner took the position that the portion of the property remaining would have no value. It established this fact by the testimony of various witnesses, each of whom fixed the value of the portion of the property taken, the same as the value of the entire property. This theory was adhered to and followed by petitioner in offering evidence and throughout the proceedings.

Appellant then examined witnesses who testified that the total value of the entire property was from $510,000 to $564,000; that the value of the part of the property taken was from $305,000 to $345,000; that the value of the part not taken, as a part of the whole property before severance, was from $205,000 to $219,000; that the cost of dismantling and removing that part of the building not taken would be $81,000, and that the value of the land not taken, after the portion of the building not taken was removed, was from $15,000 to $20,000. Some of appellant's witnesses testified that the portion of the land not taken, with that part of the building not taken remaining on it, would have no value. It then offered in evidence a plan which it had caused to be prepared for the reconstruction of that part of the building which was not to be taken. This plan contemplated a new north wall, leveling the first, second and third floors, removing ramps, filling in where ramps were located with new construction, new construction on the front wall other than the wall itself, repairs to structure on front walls, including skylights, new stairs, new toilets, plumbing changes, sewer changes and other work of that character, a new vestibule and lobby, heating changes and wiring changes, plus contractors' and architect's fees, at an estimated cost of from $174,000 to $199,606.

It also offered proof that the value of the land not taken, with that portion of the building not taken, recon-

structed according to the proposed plans, would be from $220,000 to $233,000. The court refused to admit either the plans or the testimony as to the cost of reconstruction in accordance therewith, or the value of the reconstructed building.

It was shown by such offered testimony that the proposed plan for the reconstruction of the portion of the building not to be taken was feasible and was the most economical plan or method of reconstructing that portion of the building; that by reconstructing the building according to the plans, a part of the value of the portion of the land not taken and the portion of the building not taken would be salvaged; that the building and ground remaining after reconstruction would have a value of $220,000 to $233,000. Deducting from this value the cost of such reconstruction, would leave a salvage value in the part of the land and building not taken recovered by the reconstruction, according to the testimony of one witness, of $45,993, another witness of $50,993, and the third witness of $58,993. The court refused to admit the evidence offered.

The law of eminent domain contemplates that where private property is taken for a public use, the owner is entitled to the amount of money necessary to put him in as good financial condition as he was with the ownership of the property at the time the petition was filed. Nothing short of that amount conforms to the constitutional requirements of just compensation. He must be left no richer and no poorer than he was at the time the petition was filed. (*City of Chicago* v. *Koff,* 341 Ill. 520.) Where a part only of a building is taken, it is a question for the jury to determine whether what remains is worthless and allow the value of the whole building, or what can be done to rehabilitate the remainder and the cost thereof. *West Chicago Masonic Ass'n* v. *City of Chicago,* 215 Ill. 278.

Appellee insists that in no event may the owner recover more than the total value of his property. In support of this contention it cites and relies upon *City of Chicago* v. *Lord,* 276 Ill. 571. In that case the rule was announced that the owner may not recover compensation for the part of the property taken and damages to the remainder in an amount in excess of the total value of the entire property. In applying this rule the court is not permitted to consider only the evidence offered by the petitioner. All the evidence in the case must be taken into consideration. When that is done the rule has no application to this case. Here, the highest estimate of any witness as to the value of the entire property was $564,000. The lowest was $210,000. The highest estimate of the value of the property taken was $345,000. Adding to the highest estimate of the value of the property taken, the estimated cost of reconstruction, which was $199,000, would make the highest estimated value of the property taken and the cost of reconstruction $544,000. In *City of Chicago* v. *Lord,* the estimated reconstruction cost plus the highest estimated value of the property taken was in excess of the lowest estimate of the value of the whole property. It was, however, below the highest estimated value of the whole property. The compensation fixed was above the lowest estimated value of the whole property, but less than the highest estimated value of the whole property. It was there said, "If the appellee's evidence is followed, the judgment of $11,000 exceeds the appellant's damages to the whole building by more than $1000, but if the appellant's evidence is taken it does not equal the damages by nearly $6000. The court viewed the premises. The finding is in range with the testimony, and we cannot say it was not sustained by the evidence."

Where a part, only, of a property is taken, if the jury determines that what remains is worthless, it should award

as damages the value of the entire property. And if the portion of the building which remains cannot be rehabilitated and must be removed from the premises, the burden of the cost of removing it is on the property owner. This burden is created by the act of petitioner in taking a part of the property. In such case the owner is entitled to receive, as damages to the part not taken, the cost of such removal, less the value of the remaining land after the remaining portion of the building is removed. This is necessarily so, for the reason that the petitioner, by taking a portion of the building, has burdened what remains of the land with the necessary expense of dismantling the remaining portion of the building which cannot be rehabilitated. In no other way may the owner be placed in the financial condition he was in before a part of his property was taken. This is definitely illustrated by the facts shown by the record in this case. If the owner is awarded compensation equal to the whole value of the entire property, it is still left with a portion of the land encumbered with the portion of the building not taken, and which must be removed at the expense of the owner. The cost of removing that portion of the building which cannot be rehabilitated is cast upon the owner by the taking of a part of the property. When the portion of the building remaining is removed from the land remaining, that portion of the land will then have value which belongs to the owner. The only fair and just rule, therefore, which will meet the requirements of just compensation under the constitution, is to allow to the owner the value of his entire property plus the cost of removing the portion of the building remaining, which is made necessary by taking a part of it, less the value of the portion of the land remaining, after that portion of the building has been removed. This places him in the same status financially which he occupied at the time the proceedings were instituted.

If, on the other hand, the jury determines that the part of the building remaining may be rehabilitated according to some feasible and economical plan shown by the evidence, and that by such rehabilitation the damages can be minimized so that they will be less than they would be if the remaining portion of the property be regarded as of no value, it should allow as damages to the portion of the property not taken, the cost of such rehabilitation less the value recovered by such reconstruction.

The case of *City of Chicago* v. *Koff*, 341 Ill. 520, involved a case almost parallel upon the facts. There a portion of a building was taken for the purpose of widening a street. It was there said: "The jury, in assessing damages, should either consider the remaining part of the building worthless and allow the whole value of the building, or consider what could be done with the remaining portion of the building and the cost of putting it in condition for use. (*West Chicago Masonic Ass'n* v. *City of Chicago*, 215 Ill. 278.) It is proper to take into consideration as damage to land remaining after the severance of the part taken, damages to business or income of the remaining portion, interruptions of business, inaccessibility to the remaining portion, removal of debris of portion of building remaining, and, in short, all matters arising out of the proceeding which affect the value of or the income from the remaining portion during the period in which the owner has no access to it." Many cases were cited in support of the rule announced.

The above case seems to settle almost every question raised by appellant in this case adversely to the contentions of appellee. Appellant was entitled to have the question of whether the portion of the property not to be taken was worthless, or whether it could be rehabilitated according to some feasible and economical plan shown by the evidence submitted to the jury. In the event the jury determined that the property could be rehabilitated so as to sal-

vage a part of the value of the property not taken, it was entitled to hear evidence of the estimated cost of the necessary reconstruction. The plan for rebuilding the building and the evidence offered in connection therewith, the evidence of the cost of reconstruction, including the item of the loss of rentals during the period of reconstruction, and the evidence that the reconstruction would have to be in accordance with the ordinances of the city, were properly admissible in evidence. The court erred in refusing to admit this evidence. The fact that appellee tried the case on the theory that the whole property would be rendered worthless, did not foreclose to appellant the right to have that question submitted to the jury.

Even on the theory that the whole property would be rendered worthless, which was the only theory submitted to the jury, the verdict cannot be sustained. The undisputed evidence in the record is that the cost of dismantling and removing the part of the building remaining would be $81,000. Clearly, appellant was entitled to that amount, less the value of the remaining land with the building removed, as damages to property not taken. The proof shows that the land not taken, with the building removed, would have a net value of $15,000 to $20,000. Deducting this value of the land from $81,000, which the undisputed evidence showed would be the cost of removing the building, would represent the net damages to the property not taken, whereas the jury allowed only $35,000. While it is true that the jury viewed the premises, still the amount of damages to property not taken, fixed by the jury, was not within the range of the testimony and cannot be sustained. Even where the jury views the premises it may not ignore the evidence in the case. (*City of Chicago* v. *Koff*, 341 Ill. 520.) A new trial should have been granted for this reason alone.

As to the property taken, the contentions of appellant that the court erred in refusing to admit evidence tending

to show the reproduction cost, or sound value of the building separate from the land itself, cannot be sustained. The question for the jury was the fair cash market value of the land with the building on it, as a whole. The compensation to be allowed for the property was the value of the land as land with all the improvements on it. The separate value of buildings may only be considered as it affects the value of the land. While replacement cost of buildings is one element which a witness may take into consideration for the purpose of arriving at his estimate of the value of the land, it is not admissible for the purpose of showing the value of the buildings separate and apart from the land itself. The value of buildings may be considered only in so far as it affects the value of the land. Buildings may not be valued separately. *Department of Public Works and Buildings* v. *Hubbard,* 363 Ill. 99.

Appellant also complains that certain instructions were offered by it and improperly refused by the court, and that other instructions were erroneously given on behalf of appellee. The alleged errors with reference to the instructions cannot be considered. The instructions are not included in the report of proceedings where they should be. They are incorporated only in the common-law record. While the abstract is interspersed with appropriate statements showing that certain instructions were given and certain instructions refused, the record does not justify these statements. The instructions are not certified by the trial judge and made a part of the report of proceedings, and are not properly preserved in the record. The record at one point shows only that certain "refused instructions were filed in the office of the clerk." This entry is followed by what purports to be certain refused instructions. At another point the record shows that eleven "given instructions were filed in the office of the clerk." Then follows what purports to be a group of instructions. While it is true that some of the instructions contained in the

record are marked "refused" and some of them are marked "given," there is nothing whatever in the record to show by whom any or either of these instructions were tendered. In this state of the record objections to the instructions obviously cannot be considered.

Appellant's objections to the conduct of counsel for appellee in the course of the trial need not be considered. The conduct complained of will, no doubt, not be repeated on another trial.

For the errors pointed out, the judgment is reversed and the cause is remanded to the circuit court of Cook county for a new trial.

*Reversed and remanded.*

Gunn, C.J., and Wilson, J., dissenting.