**BALTIMORE STEAM PACKET CO. v.
UNITED STATES.**

No. 47090.

United States Court of Claims.
Jan. 3, 1949.

Louis F. Carroll, of New York City (Willkie, Owen, Farr, Gallagher & Walton, Mark F. Hughes and William E. Bennett, all of New York City, on the brief), for plaintiff.

John B. Miller, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

JONES, Chief Judge.

This case involves the value of the vessel State of Virginia, her equipment and furnishings, on April 1, 1942.

The plaintiff was the owner of the vessel. On April 1, 1942, pursuant to Section 902 of the Merchant Marine Act of 1936, as amended, 53 Stat. 1255, 46 U.S.C.A. § 1242, and Executive Order No. 9054, 50 U.S.C.A.Appendix, § 1295 note, 7 Fed.Reg. 837, the War Shipping Administration requisitioned the title to and took possession of the vessel, together with her equipment and furnishings. On July 3, 1945, the Administrator of the War Shipping Administration determined that just compensation for the State of Virginia was the sum of $400,000, plus an allowance for delay in payment calculated at the rate of ⅞ of 1% per annum from April 1, 1942, to June 29, 1945.

The offer of payment on this basis was rejected. The plaintiff was paid 75% of the administrator's determination and now sues for what it contends is just compensation less the amount of the payment made.

Plaintiff asserts that just compensation for the vessel requisitioned was, at the time of the taking, $1,498,060, and it claims that amount plus interest at the rate of 6% per annum from the time of taking, less the amount of the payment.

The State of Virginia, a combination freight and passenger ship, was built for plaintiff in 1923. The vessel was licensed to carry from 412 to 592 passengers, depending on the season of the year. She had 164 saleable staterooms. She was classified by the American Bureau of Shipping with the highest rating given by the Bureau for this class of vessel. Throughout the entire period of operation the vessel had been carefully maintained and was in excellent condition on the date of taking. She had an easy sheltered run in Chesapeake Bay between Baltimore and Norfolk. The wear and tear on the vessel was less than it would have been had she been operating on the high seas. Based on a probable life of at least 40 years, on which the parties agree, the State of Virginia had a remaining probable useful life in the service in which she had been operating of twenty-one years.

The original cost of the State of Virginia was $717,105.82, including furnishings. Additions and betterments were made to the vessel after her construction and prior to the date of requisition at a total cost of $38,200.38.

At the time of taking, plaintiff was carrying insurance on the vessel in the sum of $1,000,000. Prior to June 20, 1941, the amount carried had been $900,000.

The ship had been designed especially for the Baltimore-Norfolk trade and varied in design and size from other types of river and harbor boats. There were no sales of vessels of comparable age, size, and characteristics in 1940, 1941, and 1942 upon which a market price can be based. The demand for cargo vessels of all kinds in the year 1942 was abnormal and had there been no government restrictions on

sales, the State of Virginia could have been sold for more than she would have brought in normal times.

■ Defendant took possession of the vessel's hotel equipment when it requisitioned the vessel. The equipment had been kept in good and serviceable condition, items being replaced from time to time, and when requisitioned was adequate to serve the needs for which it was originally purchased. The original cost of these items was $54,669.74. The only specific evidence which tends to reflect the market value of such equipment at the time of the requisition was that of one witness who, in arriving at his aggregate appraised value of the entire vessel, included the cost price of the hotel equipment and subjected it to the rate of depreciation he applied to the reproduction cost of the vessel. We believe that the original cost of such hotel equipment depreciated at the rate hereinafter found appropriate, represents the value of such equipment on the date of taking, as disclosed by the available testimony in the record.

After the ship was constructed and in operation, the Federal rules and regulations governing the construction and operation of ships were changed to require certain safety features in the construction of new ships which had not been incorporated in this vessel at the time of its construction. Since these rules applied only to new vessels, the State of Virginia was not required to and had not undergone alterations incorporating these features. To have reproduced the State of Virginia at the shipyard as of April 1, 1942, without hotel equipment and without the additions and betterments mentioned above, would have cost $1,615,000. The additional cost of incorporating the changes necessary to comply with the new rules and regulations would have been approximately $504,552.

■ While it may be assumed that the courts, in arriving at just compensation, would not necessarily be bound by the terms of the Merchant Marine Act, supra, since the provision for just compensation is specifically a constitutional matter, yet in arriving at what compensation is just, the courts may consider the same factors which impelled Congress to enact the provision eliminating enhancement due to causes necessitating the taking or use.

At the time of the taking our national life was at stake. If the nation failed to survive, all values would be gone. If the nation survived, certainly it would not be just to fix a value on the basis of temporary conditions when the expected useful life of the vessel would probably extend far beyond the emergency when conditions would be more nearly normal and values and prices would level off.

If sales had been permitted during the period covered by the taking, any purchaser would have considered these factors, and they must be considered in arriving at just compensation.

■ As stated above, there was no free market for vessels of this class at the time of the taking. In the absence of evidence of a market price we must set a value on the State of Virginia based on all the relevant facts contained in the record, including the cost of reproducing the vessel on April 1, 1942, the cost of the hotel equipment requisitioned, the physical condition and age of the vessel, the amount of insurance then carried, the type of service in which the vessel was engaged, and, in the light of all these circumstances, the proper rate of depreciation. We have also given consideration to the earnings of the vessel prior to the taking, and to the plaintiff's earnings since the taking from the use of the vessels remaining in its possession.

■ It seems to us that $1,615,000 represents a fair amount for reproduction cost on the date of taking; that to this should be added $54,669.74, the cost of the requisitioned hotel equipment, and that in the light of all the facts disclosed depreciation at the rate of 2½% on a straight-line basis for a period of 19 years comes nearer to being fair to both sides than any other formula suggested in this case. However, as was stated by the Supreme Court in the case of Standard Oil Co. v. Southern Pacific Co., 268 U.S. 146, 156, 45 S.Ct. 465, 467, 69 L.Ed. 890:

"It is to be borne in mind that value is the thing to be found, and that neither cost

of reproduction new, nor that less depreciation, is the measure or sole guide. The ascertainment of value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts."

While formulae may be useful as guide posts, they are not controlling. Each vessel is an individual thing and its value at the time of the taking must be determined from all the evidence in the record and in the light of conditions then existing.

The plaintiff contends that the reproduction cost to be considered in arriving at just compensation should be the cost of reproducing the State of Virginia, incorporating the changes necessary to comply with the new Federal rules and regulations existing at the time of the taking. Plaintiff argues that only such reproduction cost would represent indemnity, pointing out that if the construction of a "complying" vessel would result in a cost lower than the cost of reproducing an exact duplicate of the State of Virginia, the Government would be entitled to the benefit of the saving.

Plaintiff concedes that the issue is a novel one in the field of just compensation for requisitioned or damaged vessels. Plaintiff relies on cases decided in state courts where property had been partially taken in condemnation proceedings, and contends that the principle applied in such cases is analogous to that urged in the instant proceeding. We cannot agree that the situations are at all analogous. Plaintiff tells us that in City of Chicago v. Callender, 396 Ill. 371, 71 N.E.2d 643, the court held that the owner of property damaged when the city condemned part of his property in the widening of a street, was entitled to the cost of constructing a new wall and other alterations to rehabilitate the remaining portions, *including the cost of complying with City ordinances affecting the reconstruction.* We do not so read the case, which we find to hold that it was error to refuse to submit to the jury the question whether plaintiff's remaining property could be rehabilitated, and that in connection with such question the jury was entitled to hear evidence of the cost of re-

construction in accordance with City ordinances. The only question that had been submitted to the trial jury was whether or not the portion of the property not taken was worthless. The court pointed out that just compensation in the field of eminent domain is for the purpose of placing the plaintiff in as good a condition as he was before the taking, no richer, no poorer. A plaintiff may be restored to such a condition by an award of damages for the value of the entire property where it is found that the remainder not taken is worthless. The court then said, 71 N.E.2d at pages 647, 648:

"If, on the other hand, the jury determines that the part of the building remaining may be rehabilitated according to some feasible and economical plan shown by the evidence, *and that by such rehabilitation the damages can be minimized* so that they will be less than they would be if the remaining portion of the property be regarded as of no value, they should allow as damages to the portion of the property not taken, the cost of such rehabilitation less the value recovered by such reconstruction." [Italics supplied.]

The plaintiff also refers us to cases dealing with the indemnity obligation of an insurer against fire losses.

The case at bar is not concerned with a partial taking where the court might consider alternate methods of making plaintiff whole. If this were a case of damage to plaintiff's ship and the cost of an exact duplicate were less than the cost of rehabilitating the ship to comply with regulations, the cases cited by plaintiff would be authority for our taking the former course and so minimizing damages. Neither, we think, does the Government stand in the place of an insurer having a contract of indemnity with the plaintiff.

If there had been a market for plaintiff's vessel on April 1, 1942, and plaintiff had sold it to another private individual, the market price might have equalled the reproduction cost of an exact duplicate, but would hardly have included an additional $504,552 for compliance features not present in plaintiff's vessel. We do not believe that plaintiff is entitled to re-

ceive more for its vessel from its government than it could have obtained from a private purchaser. We think that the additional cost of such compliance features is no more a valid element of just compensation than it would be of market price. Had there been a market for plaintiff's vessel at the time of taking and just compensation could have been based on comparable sales, such sales would have been of vessels of the same age and type which would likewise have lacked the features required by the new regulations.

■ Plaintiff further contends that reproduction cost should include such items as interest during construction, inspectors' fees, classification fees and launching expenses. Again we cannot see how these items are elements either of market price in the event of a sale, or a proper basis for just compensation. As plaintiff concedes, only one of the several witnesses took such costs into consideration in arriving at reproduction costs. We find no justification for including such items in our determination of value.

■ Plaintiff also requests a 6% allowance for a factor which it terms "immediate availability" of the vessel for service due to its excellent condition at the time of taking. The good condition of the vessel was taken into consideration in determining the proper rate of depreciation.

■ Plaintiff urges that in addition to the cost of an exact duplicate vessel (non-complying), the cost of certain additions and betterments in the amount of $38,200.-38 should be added to the reproduction cost before deduction for depreciation. Such additions and betterments appear to consist of the installation of a sprinkling system, conversion from coal to fuel oil, installation of a streamlined rudder and the modernization of staterooms. The record is silent on the question of how much of the cost of those items represents a net gain in the value of the vessel. The presence of such improvements on the State of Virginia was one of the factors considered in arriving at a fair reproduction cost and the comparatively low rate of depreciation.

Considering the entire record we find that the fair and reasonable value of the vessel State of Virginia on April 12, 1942 was $825,000. Standard Oil Co. v. Southern Pacific Co., 268 U.S. 146, 156, 45 S.Ct. 465, 69 L.Ed. 890; Seven-Up Bottling Co. v. United States, 68 F.Supp. 735, 107 Ct.Cl. 402, 404. Plaintiff has been paid the sum of $300,000, together with $8,515.07 on account of delay in payment to June 29, 1945.

■ Plaintiff is entitled to recover $525,000 with interest at the rate of 4% per annum from November 14, 1945, to date of payment. Plaintiff is also entitled to recover interest at the rate of 4% per annum on $825,000 from April 1, 1942 to November 14, 1945, less a credit of $8,515.-07, the amount paid by the Government on November 14, 1945, as compensation for delay in payment to June 29, 1945. These items of interest are allowed not as interest but as a part of just compensation.

It is so ordered.