**HENJES et al. v. UNITED STATES.**

No. 47416.

United States Court of Claims.

Jan. 3, 1950.

Edmund F. Lamb, New York City, Purdy & Lamb, New York City, and Ellis, Houghton & Ellis, Washington, D. C., on the briefs, for plaintiff.

Kendall M. Barnes, Washington, D. C., with whom was H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

JONES, Chief Judge.

This is a suit on a cost-plus-a-fixed-fee contract and for the value of a tug; the Robert Henjes, which was requisitioned by the defendant on August 1, 1942.

For simplicity the executors of the will of Gerd H. Henjes and the operating corporation will be referred to as plaintiff since Mr. Henjes owned all the stock in the corporation Henjes Marine, Inc., at the time of his death on September 23, 1943.

Prior to August 1, 1942, plaintiff was the sole owner of the tug. It was originally built at Solomons Island, Maryland, in 1916 as a steam vessel for the United States Coast Guard. It was well built and equipped as is set out in detail in finding 2.

The plaintiff acquired the vessel in 1938 at which time it had been laid up by the owners. After the purchase the tug was drydocked and caulked. The Bureau of Marine Inspection and Navigation, after examination, issued a certificate of inspection. For a short time thereafter she was operated by plaintiff as a steam tug.

In the summer of 1938, the plaintiff began to convert the vessel into a Diesel tug. She was overhauled, the superstructure removed and new machinery and equipment installed, including a 480-horsepower Diesel

engine and auxiliaries, switchboard, electric wiring, heating plant, propeller, air tank, oil tanks, and lifeboat. The deckhouse and pilothouse were rebuilt.

The conversion was completed in about six months.

After these changes the vessel was operated as a Diesel tug in New York harbor until February 25, 1942, when she was delivered to certain contractors who were performing work for the Navy Department.

These contractors had theretofore on December 17, 1941, entered into a cost-plus-a-fixed-fee contract with the United States for the expansion of the facilities at Floyd Bennett Field, Brooklyn, New York. On March 11, 1942, these contractors, with the approval of the defendant's officer-in-charge entered into a charter or lease contract with the plaintiff for use of the Robert Henjes.

It was a bareboat contract at a rental of $100 per day. No time was specified but it was provided that the contractors could terminate the contract at any time it appeared to be to the Government's advantage.

It was stipulated that the lessor should deliver to the Government the title to any piece of equipment free of all liens when and if the total rental paid to the lessor for such equipment equalled the value thereof plus one percent per month for each month or fraction thereof it had been in use. The rental or lease contract also gave the Government the option to purchase any such equipment, during or at the termination of the contract by paying to the lessor the difference in the amount of rent paid and the value of the vessel. Attached to the charter was a schedule in which, for the purposes of the option, the agreed valuation was $100,000.

The tug was continuously employed from February 25, 1942, to July 31, 1942, in connection with the expansion of the facilities at Floyd Bennett Field. During that period rentals aggregating $14,100 were paid plaintiff.

Pursuant to a request dated July 20, 1942, made by a procurement officer of the Navy Department, the War Shipping Administration on August 1, 1942, requisitioned the Robert Henjes, its equipment and supplies. This action was taken pursuant to Section 902 of the Merchant Marine Act of 1936, 46 U.S.C.A. § 1242.

A survey and an appraisal were made and on October 5, 1942, the War Shipping Administration offered plaintiff $51,781, the appraised value, as compensation for the vessel, and on October 12 advised him that he had the privilege of accepting 75 percent of that amount and suing for any balance he claimed would be necessary to provide just compensation.

There followed some further efforts by the owner to get the amount of the award increased and to obtain further assurance that none of his rights would be waived. The defendant's voucher in the sum of $38,835.75 was issued and paid on October 2, 1943.

The delay in payment after October 12, 1942, was due to Mr. Henjes' refusal to sign the bill of sale and other documents prepared by the defendant. This refusal was based on the owner's fear that the execution of these documents would interfere, with his right to recover under the terms of the charter agreement. In view of the letter and offer from the War Shipping Administration in early October 1942 and the other circumstances in this case, we find that plaintiff is not entitled to interest, as a part of just compensation, after October 12, 1942, on the 75 percent of the award which was tendered at that time.

The plaintiff claims the sum of $91,900, the balance that admittedly would have been due if the defendant had exercised its rights to purchase under the charter agreement.

In the alternative the plaintiff claims the actual value of the tug at the time of the taking, plus the rental value from August 1, 1942, to January 23, 1943, on the basis of the terms of the charter agreement.

On November 17, 1943, the plaintiff instituted a suit in the Supreme Court of the State of New York against the contractors for the rental value during the period mentioned. The issues were submitted to the

court without a jury upon the pleadings and certain stipulated facts. The court dismissed the suit and entered judgment for the defendant on the ground that the taking of the vessel by the Government effectuated a frustration of the contract sued upon.

Regardless of whether the decision of the New York Supreme Court was *res judicata*, it is apparent that the damages which the plaintiff suffered, if any, were damages of frustration and not of appropriation, and are not compensable. Omnia Commercial Co. v. United States, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773.

The defendant did not exercise its option under the charter contract but chose to pursue its rights of requisition under Section 902 of the Merchant Marine Act of 1936. The charter agreement was for an indefinite term and stipulated that it could be terminated at any time it appeared to be to the Government's advantage for such action to be taken. In these circumstances, plaintiff had no right to recover any rental or lease monies after the actual requisitions which occurred on August 1, 1942.

The facts in the case of Muschany v. United States, 324 U.S. 49, 65 S.Ct. 442, 89 L.Ed. 744, on which plaintiff relies, are entirely different. In that case the contract was directly with the Government and stipulated that if condemnation were resorted to, the option price should measure the landowner's compensation. No such contractual obligation is found in the instant case.

The question reverts to the actual value of the vessel, the Robert Henjes, at the time of the taking, August 1, 1942.

There was no active market for tugboats in or near the harbor of New York at that time. Very few tugs had been built during preceding years. There was a strong demand for tugs on account of the general increase in business, the need for tugs which was created because the Government had requisitioned a number of them for use in the defense program.

In its appraisal the Appraisal Board of the War Shipping Administration determined separately the replacement cost of the hull, the cost of the power plant installed in the vessel and the purchase price and the installation costs of the gear and other equipment not related to the power plant. It made no allowance for the increase in the cost of shipping construction, material and labor.

The life of a tugboat usually ranges from twenty to forty years. For a number of years this tug had a limited use in Government service. It had a longer useful life than if the vessel had been continuously engaged in harbor work in New York. The fact that it was rebuilt in 1938 and new machinery and equipment installed, gave it a longer life than it would otherwise have had. The value of the engines and other equipment also were not necessarily limited to the useful life of the vessel. The lifeboat tackle and other equipment which were purchased for the vessel in 1938 were not subject to the same amount of depreciation as the hull itself.

The application of any one of the several rates of depreciation does not necessarily lead to the proper conclusion as to value. Each vessel is an individual thing and its value at the time of requisition must be determined in the light of all the circumstances that properly go into an appraisal of value. Standard Oil Co. of New Jersey v. Southern Pacific Co., 268 U.S. 146, 155, 156, 45 S.Ct. 465, 69 L.Ed. 890. Baltimore Steam Packet Co. v. United States, 81 F.Supp. 707, 112 Ct.Cl. 433. After considering these various elements and excluding the enhancement due to the causes necessitating the taking, we find that the reasonable value of the Robert Henjes on August 1, 1942, was $60,000. The plaintiff is entitled to recover $21,164.25 with interest thereon at the rate of 4 percent per annum from October 12, 1942, to the date of payment; and in addition thereto, interest at the same rate on $60,000 from August 1, 1942 to October 12, 1942, the interest in each case being allowed not as interest but as a part of just compensation.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.